*11-2298*
*IN THE UNITED STATES COURT OF APPEALS*
*FOR THE SEVENTH CIRCUIT*

| | | |
|---|---|---|
| *DORIS KEETON,* | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| *v.* | ) | *Appeal No.: 11-2298* |
| | ) | *Dist. Ct. No.  10 CV 05502* |
| *MORNINGSTAR, INC.* | ) | *Judge Amy J. St. Eve* |
| | ) | |
| *Defendant.* | ) | *Magistrate Judge Michael T. Mason* |

_____
_____

*BRIEF AND ARGUMENT*
*OF PLAINTIFF-APPELLANT*

*ARMAND L. ANDRY*
*One South Dearborn*
*Suite 2100*
*Chicago, Illinois 60603*
*773/626-3058*

ORAL ARGUMENT REQUESTED

CERTIFICATE OF INTEREST


I, Armand L. Andry, attorney for Plaintiff-Appellant supply the following certificate in compliance with Federal Rule of Appellate Procedure 26.1:

1.  The full name of every party or amicus the undersigned represents in this case is:

DORIS KEETON

2.  The Plaintiff is not a corporation.

3.  The names of all law firms whose partners or associates have appeared for the party in the district court or are expected to appear for the party in this court is:

ARMAND L. ANDRY & ASSOCIATES


_/s/ Armand L. Andry_____

Armand L. Andry

TABLE OF CONTENTS

Certificate of interest......................................................... 1

Table of Contents............................................................2

Table of cases, statutes and authorities cited.................3-5

Jurisdictional Statement................................................6

Statement of Issues Presented.........................................6

Statement of the Case...................................................6

Statement of Facts.......................................................6 -17

Summary of Argument..................................................17

Statement of Standard of Review................................18

Argument.................................................................18-29

Conclusion.................................................................30

Certificate of Compliance with F.R.A.P. RULE 32(a)(7) ….31

Circuit Rule 30(d) Statement…………………….. 32

Certificate of Service…………………………….33

Attached required short appendix…………………Pg. 34

TABLE OF CASES, STATUTES AND AUTHORITIES CITED

I.   THE DISTRICT COURT ERRONEOUSLY RULED THAT PLAINTIFF'S MOTION
     FOR LEAVE TO FILE HER RESPONSE TO THEMOTION FOR SUMMARY
     JUDGMENT INSTANTER WHERE THE MOTION WAS FILED PRIOR TO ANY
     RULING ON SUMMARY JUDGMENT.

*Mattern v. Secretary for the Department of Corr.,* 494 F.3d 1282 (11th Cir.

2007)……………………………………………………….……………18;

*United States Parole Commission v. Geraghty*, 445 U.S. 388 (1980)………...18;

*Franks v. Bowman Transportation Co.*, 424 U.S. 747 (1976)……………..…18;

*Weismueller v. Kosobucki,* 571 F.3d 699 (7th Cir. 2009)……..……………18;

*MainStreet Organization of Realtors v. Calumet City*, 505 F.3d 742 (7th

Cir.2007)……………………………………………………………………18;

*Soliman v. United States ex rel. INS*, 296 F.3d 1237 (11th Cir. 2002)………..19.

II.   THE COURT ERRED IN RULING THAT SUMMARY JUDGMENT WAS
      APPROPRIATE IN THIS CASE

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1993)……………………… 19;

*Courtney v. Biosound*, 42 F.3d 414 (7th Cir.1994)…………….……………20;

*Serfecz v. Jewel Food Stores*, 67 F.3d 591 (7th Cir.1995)……………………20;

*United States v. Diebold, Inc.*, 369 U.S. 654 (1962)…………….…………..20;

*Williams v. Anderson*, 959 F.2d 1411 (7th Cir.1992)………………...……….20;

*Kephart v. Inst. Of Gas Tech.,* 630 F.2d 1217 (7th cir. 1980)……;;;;;;;;………20;

3

*Grana v. Illinois Department of Transportation,* 232 F.Supp. 2d 879 (N.D. Ill., 2002)……………………………………………………………………20;

42 U.S.C. § 2000e-5(e)(3)(A)…………………………………………………20;

*Ledbetter v. The Goodyear Tire and Rubber Company,* 550 U.S. 618 (2007)….20-221;

*Sylvester v. SOS Children's Villages Illinois, Inc.,* 453 F.3d 900, (7th Cir 2006)…21, 26-27;

*Stone v. City of Indianapolis Public Utilities Division,* 281 F.3d 640 (7th Cir. 2002)..21-22;

*Cooper v. Southern Co.,* 390 F.3d 695 (11th Cir. 2004)…………………………..22-23;

*Irby v. Bittick,* 44 F.3d 949 (11th Cir. 1995)………………………………………..22-23;

*Mulhall v. Advance Sec., Inc.,* 19 F.3d 586 (11th Cir. 1994)…………………………23;

*Eaton v. Indiana Dept. Of Corrections,* (No. 10-3214. September, 2011)   ___ F.3d ___ (7th Cir. 2011) ……………………………………………………………………..24, 25;

*Lunini v. Grayeb,* 395 F.3d 761 (7th Cir. 2005)……………………………………..24, 25;

*McDonald v. Vill. of Winnetka,* 371 F.3d 992 (7th Cir.2004)……………..…………..25;

*Bell v. Duperrault,* 367 F.3d 703 (7th Cir.2004)………………………………………..25;

*Purze v. Vill. of Winthrop Harbor,* 286 F.3d 452 (7th Cir.2002)………………………..25;

*Harlen Assoc. v. Vill. of Mineola,* 273 F.3d 494 (2d Cir .2001)…………………………25;

*Gordon v. United Airlines,* 246 F3d 878 (7th Cir. 2001)…………………………………25;

*Collier v. Budd Co.,* 66 F.3d 886, 893 (7th Cir. 1995)……………………………………..25;

*Sitar v. Indiana Dept. of Transp.,* 344 f.3d 720 (7th Cir. 2003)…………………………27, 28;

*Hatmaker v. Memorial Medical Center,* 619 F.3d 741 (7th Cir. 2010)…………………. 27, 28;

*Kodl v. Board of Educ, Sch. Dist. 45, Villa Park,* 490 F. 3d. 558, (7th Circ. 2007)……..27;

*Nagle v. Village of Calumet Park,* 554 E.3d 1106 (7th Cir. 2009)………………………27;

*Brennan v. GTE Government Systems Corp.,* 150 F.3d 21 (1st Cir. 1998)………….28;

*Lattimore v. Polaroid Corp.,* 99 F.3d 456 (1st Cir. 1996)……………………………28;

*Weinstock v. Columbia University,* 224 F.3d 33 (2d Cir. 2000)……………………..28;

*Stern v. Trustees of Columbia Univ.*, 131 F.3d 305 (2d Cir. 1997)………………28;

*Floyd v. State of Missouri Dept. of Social Services, Div. of Family Services*, 188 F.3d 932 (8th Cir. 1999)………………………………………………………………………………28, 29;

*Perdomo v. Browner*, 67 F.3d 140 (7th Cir.1995)…………………………… 29;

*Graham v. Long Island R.R.,* 230 F.3d 34 (2d Cir. 2000)……………………29;

*Williams v. City of Valdosta*, 689 F.2d 964 (11th Cir. 1982)…………………29;

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133  (2000)………..29;

*Adreani v. First Colonial Bankshares, Corp.*, 154 F.3d 389 (7th Cir. 1998)….29.

## JURISDICTIONAL STATEMENT

This action was brought under 42 U.S.C. 2000e et seq., and 42 U.S.C. 1981 alleging violation of the Plaintiff's right to be free of discrimination based on race and in retaliation for opposing discrimination, before the United States District Court for the Northern District of Illinois, Eastern Division.  The jurisdiction of the district court was invoked pursuant to the above-named statutes and 28 U.S.C. Sec. 1331(a)

The matter was decided by the court on summary judgment on May 23, 2011, the Court entered a finding for Defendant.  Judgment was entered on May 23, 2011.

Appellate jurisdiction is invoked by Plaintiff on the judgment pursuant to 28 U.S.C.  Sec. 1291.  Plaintiff timely filed a notice of appeal on June 6, 2011.

## STATEMENT OF ISSUES PRESENTED

Whether the District court erred by declaring the Plaintiff's motion for leave to file her responses to Defendant's motion for summary judgment "moot" when the motion was filed before the decision on the motion.

Whether summary judgment was appropriate on all of Plaintiff's claims against Defendant  .

## STATEMENT OF THE CASE

This appeal arises from the ruling of the District Court Judge granting summary judgment in favor of Defendant in a Title VII and 42 U.S.C. 1981 action.

### Disposition in the District Court

Plaintiff filed an action in the District Court alleging discrimination in violation of Title VII of the Civil Rights Acts of 1964, 42 U.S.C. 2000e as amended and 42 U.S.C. 1981.   Defendant MORNINGSTAR, INC. filed a motion for summary judgment with respect to all claims and the court granted Defendant's motion.  Plaintiff disputes and appeals this determination.

6

STATEMENT OF FACTS

Morningstar, Inc., is a corporation doing business in Chicago, Illinois.  It is a leading provider of independent investment research.  (Plaintiff's Local Rule 56.1 Statement, hereinafter "DOC. 36 D.S.F. AND DOC. 43(2) P.S.F." ¶ 1; Defendant's Local Rule 56.1 Statement, hereinafter "DOC. 36 D.S.F.")[1]  Plaintiff was hired in August of 2002 as the only Compliance Consultant for Defendant.  (DOC. 43(2) P.S.F. ¶ 81)   In 2005 or 2006 another person was hired as a Compliance Consultant, Rachel Felsenthal, however Felsenthal quit soon after her hire. (DOC. 43(2) P.S.F. ¶ 82)  After Felsenthal quit Rita Bentzler was hired to replace her in 2006 or 2007.  (DOC. 43(2) P.S.F. ¶ 83)   In 2008 Lisa Derner was hired as the third Compliance Consultant.  (DOC. 43(2) P.S.F. ¶ 84)   Compliance officer Rita Bentzler worked with the Ibbotson account before Plaintiff.  (DOC. 43(2) P.S.F. ¶ 85)   When new compliance officer Lisa Derner was hired and accounts were being re-assigned Bentzler said she no longer wanted to work with Ibbotson because her experience with them had not been positive.  (DOC. 43(2) P.S.F. ¶ 86)

Morningstar's Compliance Consultants work in the Company's Legal and Compliance Department and report to its Chief Compliance Officer.  They are responsible for developing, implementing, and maintaining  procedures to ensure that the Company's subsidiaries that are registered investment advisors comply with applicable federal securities law and regulations and in particular,  the investment Advisors Act of 1940.  (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 4)

---

[1]  The paragraphs in Plaintiff and Defendant's Local Rule 56.1 Statements are identical except the additional facts recited by Plaintiff in ¶¶ 81 through 109.   The district court ruled that a motion to file instanter Plaintiff's Local Rule 56.1 Statement (DOC. 43) was "moot" based on the ruling granting summary judgment (DOC. 45) even though the motion was filed prior to the ruling granting summary judgment (DOC. 48).  That ruling is challenged on this appeal.  However, even if the court did not consider the Plaintiff's Local Rule 56.1 Statement the grant of summary judgment is erroneous and this court reviews that ruling de novo.

At all times relevant to this action Scott Schilling served as Morningstar's Chief Compliance Officer. (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 5)  At the time this action was filed Morningstar employed three compliance Consultants:  Plaintiff; Lisa Derner; and Rita Bentzler. All three report directly to Schilling (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 6)   Keeton's race is black.  Derner and Bentzler are white (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 7)   In April 2008, Keeton, Derner and Bentzler were each assigned to one of Morningstar's three subsidiaries.  They had primary responsibility for providing compliance support to their assigned subsidiary.  Keeton was assigned to Ibbotson Associates; Derner to Morningstar Investment Services; and Bentzler to Morningstar Associates. (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 8)

Morningstar does not maintain any formal policies or practices for determining the initial base salary or salary increases of Compliance Consultants and makes these decisions on an *ad hoc* basis.  (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 9, 10)  Defendant employs no uniform standard for salary decisions of Compliance Consultants.  (DOC. 43(2) P.S.F. ¶ 89)

Plaintiff's initial base salary was $62,000.00 when she was hired in August 2002.  In 2003, her base salary increased to $64,500.  In 2005, her base salary increased to $66,000.  In 2006, Keeton's base salary increased to $68,000. (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 13)  Derner was hired by Morningstar in April 2008 and her initial base salary was $70,000.  (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 14)   Bentzler was hired by Morningstar in May 2007 and she was paid an initial salary of $65,000.  (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 15)

In  November  2009, for the first time, Morningstar's  Legal Department conducted a new procedure called "360 reviews," which are peer reviews.  The Compliance Consultants were reviewed by personnel in their assigned subsidiaries as well as Morningstar personnel.  These reviews were used to evaluate the performance of the Compliance Consultants (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 16, 17)    Employees of Morningstar and Ibbotson completed 360

reviews for Plaintiff. (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 18)  Employees of Morningstar

and Morningstar Investment Services completed 360 reviews for Derner.  (DOC. 36 D.S.F. AND

DOC. 43(2) P.S.F. ¶ 22)  Employees of Morningstar and Morningstar Associates completed 360

reviews for Bentzler.  (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 23)  Plaintiff was the only

Compliance Consultant evaluated by employees of Ibbotson.

On February 22, 2010, Schilling provided written performance reviews for each of the three

Compliance Consultants.  These reviews incorporated Schilling's own observation as well as

feedback from the 360 reviews (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 25)  Prior to 2010,

Morningstar did not provide written performance reviews for Compliance Consultants (DOC. 36

D.S.F. AND DOC. 43(2) P.S.F. ¶ 26)  Among other things, Schilling's performance review for

Plaintiff identified several areas where Plaintiff could improve her interpersonal skills including

cultivating better relationships, conducting herself in a manner that fosters people being comfortable

approaching her, and exhibiting a more positive attitude (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F.

¶ 27)    Plaintiff understood that her performance evaluation was critical of several aspects of her

performance (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 28)  Sometimes in March 2010, Keeton

prepared a written response to her performance evaluation.  She emailed the response to Scott

Schilling on January 3, 2011.  In her response, she wrote: "I cannot express in words how very

deeply affected I am by the comments in this review.  I feel it is totally one-sided and an unfair

depiction of my abilities and actions" (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 29)

In fiscal Year 2009, Morningstar paid a total of $203,000 in base salaries for its Compliance

Consultants.  Keeton's 2009 base salary was $68,000; Derner's was $70,000; and Bentzler's was

$65,000.  (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 30)  On February 7, 2010, Robbins

informed Schilling that Morningstar was contemplating increasing its budget for Compliance

Consultants salaries. (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 31)  The Compliance

9

Consultants were ultimately awarded the following base salaries effective on July 1, 2011: $70,000 for Keeton; $73,000 for Derner; and $70,150 for Bentzler. (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 35)

Since March 10, 2010, Keeton has been on disability leave for medical reasons unrelated to the allegations of the complaint. In lieu of her salary, she has been receiving short- term and long -term disability benefits through Morningstar's disability insurance policies and plans (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 36)

Plaintiff alleges in this lawsuit that she was treated differently than the other Compliance Consultants because of her race. (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 37) Plaintiff alleges that she was treated less favorably than Derner with respect to her base salary since she should have been paid more than Derner because she has more seniority with Morningstar and more experience as a Compliance Consultant and based other actions taken against her. (DOC. 36 D.S.F. ¶ 38; AND DOC. 43(2) P.S.F. ¶ 38, and 81 -100) Keeton also alleges that she was treated less favorably than Bentzler with respect to her pay. (DOC. 36 D.S.F. 39 AND DOC. 43(2) P.S.F. ¶ 39, Defendant's Exhibit B, Plaintiff's Deposition, pg. 99 lines 7thru 14) See Defendant's statements of facts 35 where Plaintiff received the lowest based salary after February, 2010.) Plaintiff also alleged that, sometime in 2005 or 2006, she complained that the Morningstar Associates subsidiary was demanding quick turnaround times to review advertising, but that nobody responded to her complaints. Keeton alleges that when Bentzler was subsequently assigned to work with morning star Associates, Bentzler made similar complaints and that meetings were scheduled to discuss the issue. Keeton testified she "never knew the full results of what happened" in response to Bentzler's alleged complaints. (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 44) Plaintiff alleges that Derner and Bentzler sometimes sighed or rolled their eyes at staff meetings due to the length of time Keeton took to report on the status of her work. Her co-workers' alleged sighing and eye rolling made Keeton

10

feel like she was being made fun of.  (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 45)  Plaintiff

also alleged that Schilling sometimes participated in meetings with Ibbotson personnel and did not

invite her to participate. (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 46)   Plaintiff also alleged that

Compliance Consultants were required to perform certain due diligence work for their respective

business units.  Keeton further alleges that, at some point, Derner was excused from performing her

due diligence responsibilities.  (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 48)   Plaintiff also

alleged that she was given an unfavorable seating assignment as compared to Bentzler and Derner.

(DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 50)   Plaintiff testified that her seating assignment was

less favorable than her co-workers' because she was not sitting across from Schilling and was not

sitting adjacent to the main hallway.  Plaintiff believed that employees with the most seniority should

sit nearest to the hallway.  (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 55)

   Plaintiff conveyed to Morningstar employee Stephanie Woodruff  on several occasions that she

felt she was being treated less favorably than her co-workers because of her race.  Woodruff is a

facilities clerk that works in Morningstar's internal copy center.  (DOC. 36 D.S.F. AND DOC.

43(2) P.S.F. ¶ 58)  Morningstar's management and its Human Resources Department were unaware

of Plaintiff's conversations with Woodruff(DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 59)

Plaintiff complained to management on one occasion regarding her work condition.   (DOC. 36

D.S.F. AND DOC. 43(2) P.S.F. ¶ 60)  Plaintiff alleged that, sometime in February 2010, she

observed Bentzler watching her and writing things down on a yellow notepad.  Keeton further alleges

that when Bentzler stepped away from her desk, she went to Bentzler's workspace and saw that

Bentzler had been writing down all of Keeton's actions that morning on the notepad.  (DOC. 36

D.S.F. AND DOC. 43(2) P.S.F. ¶ 61)  Plaintiff reported Bentzler's alleged actions to Schilling.

Schilling informed Keeton that he had not directed Bentzler to keep track of  Schilling asked Keeton

whether she wanted him to do anything about it.  Keeton responded that she did not want him to do

11

anything at that time, and that she would let him know if she wanted him to do anything at a future time.  (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 62)    Plaintiff subsequently reported Bentzler's alleged actions to Morningstar's Human Resources Director Cathy  Rezy.  (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 63)

Rezy conducted an investigation of Plaintiff's allegations.  Rezy interviewed Bentzler, who denied the allegations and appeared distraught by Keeton's accusations.  Rezy never found the yellow notepad.  Based on her investigation, Rezy determined there was insufficient cause to issue any discipline.  (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 64)  During Rezy's investigation, Bentzler alleged that Keeton was engaging in various forms of workplace misconduct.  Bentzler provided a written statement of her allegations against Plaintiff.  (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 65)  Rezy investigated Bentzler's  allegations against Keeton but saw no reason to interview Keeton .  Keeton received no reprimand or discipline of any kind as a result Bentzler's allegations.  (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 66)  Plaintiff believes that management credited Bentzler's allegations against her, but admits that nobody ever told her so.  (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 67)  Plaintiff believes that management- specifically Robbins, Schilling and Rezy spent more time talking with Bentzler in the aftermath of this incident.  Indeed, Keeton testified that she believes that "all the white folks circled around the white girl."  (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 69)  Plaintiff alleged the work environment was tense after the incident with Bentzler and that Schilling, Bentzler  and Derner did not respond to her when she greeted them with "good morning" or "good night."  (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 70)

As a Compliance Consultant, Plaintiff was responsible for conducting searches using specified search terms in the email accounts of Ibbotson staff on a quarterly basis in order to monitor their compliance with applicable federal securities laws and regulations.  Keeton performed this job task

by using Morningstar's Enterprise Vault email surveillance software system.   (DOC. 36 D.S.F.

AND DOC. 43(2) P.S.F. ¶ 72)  On November 19, 2010, Keeton's counsel served Morningstar's

counsel with documents in response to Morningstar's written discovery requests.  Included in

Keeton's production were numerous private, confidential emails among and between Morningstar

employees other than Keeton that did not relate to compliance issues.  Several of the emails produced

by Keeton contained attorney-client privileged communications involving, or made at the direction of

General Council Robbins and Morningstar's outside counsel Lisa McGarrity.   (DOC. 36 D.S.F.

AND DOC. 43(2) P.S.F. ¶ 73)   On December 3, 2010, Morningstar sent Keeton a letter informing

her that it had commenced an investigation regarding her possession of these emails and requesting

her to appear for an investigatory interview.   (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 74)

Morningstar's Code of Ethics provided that employees are required to cooperate in investigations

conducted by the Company, including making themselves available for investigative interviews when

requested.  It is standard practice at Morningstar to interview employees suspected of misconduct to

give them a chance to explain their actions and exonerate themselves.   (DOC. 36 D.S.F. AND

DOC. 43(2) P.S.F. ¶ 75)  Keeton signed a form acknowledging that she received a copy of and

understood Morningstar's Code of Ethics.   (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 76)

Morningstar's Director of Internal Audit interviewed Keeton on January 20, 2011.  Keeton, her

attorney, and Melia Kimura, a Human Resources Consultant, were present for the interview.   (DOC.

36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 77)

    Plaintiff stated at the interview and testified at her deposition that, in February or March 2010,

she used the Enterprise Vault software to search for an email that had been sent to her containing

information about Bentzler's vacation plans and another email from Peng Chen, Ibbotson's

President, to Schilling that had been forwarded to her.  Keeton used the name "Doris" as a search

term and discovered several emails referring or relating to her, including the ones she produced

during discovery.  Keeton denied any intent to violate company policy.  (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 78)  On February 1, 2011, Rezy sent Keeton a letter informing her that Morningstar had concluded its investigation.  In the letter, Rezy stated that Keeton was not authorized to use the enterprise Vault software in the manner in which she did, and that Keeton had exercised poor judgment in her actions.  The letter further stated that Morningstar was giving Keeton the benefit of the doubt that she did not intend to violate company policy and accordingly, would  not be taking any disciplinary action against her,  In fact, it took no disciplinary action against her. (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 79)

On March 11, 2011, this court granted a motion in limine filed by Morningstar with respect to these emails.  It ordered Keeton to destroy or delete attorney-client privileged email communications in her possession, and to certify that she has not maintained copies of such emails.

Plaintiff asserted the following as additional facts she sought to have considered with Defendant's motion for summary judgment.  These facts were included as an exhibit which was Plaintiff's proposed  Local 56.1 Statement and Memorandum of Law in opposition attached to a motion for leave to file instanter the Response to the motion for summary judgment instanter caused by Plaintiff's attorney's chronic health problems.  (See DOC. 43)  The district court denied the motion as "moot."[2]

None of the Ibbotson employees who rated Plaintiff on her 360's were the same as those who rated other compliance consultants so the ratings of each compliance consultant was independent and cannot be compared.  (DOC. 43(2) P.S.F. ¶ 88)  Plaintiff never received a written performance review before February 22, 2010 but had been told verbally by Scott Schilling that she was doing a good job.  (DOC. 43(2) P.S.F. ¶ 90)

---

[2]   See footnote 1 above.

Scott Schilling's relationship with Derner and Bentzler was on a friendlier basis than his relationship with Plaintiff.  Schilling told Plaintiff that he was not a morning person, however , he laughed and joked with the white Compliance Consultants,  discussed personal matters with them, and had long conversations with them in the mornings.  He became a morning person for them. (DOC. 43(2) P.S.F. ¶ 91)  Scott Schilling excluded Plaintiff from meetings and information concerning Ibbotson and did not follow up on her complaints about Plaintiff's treatment by Ibbotson employees which could lead to a material violation of Federal Securities Laws and placed Ibbotson in jeopardy.  (DOC. 43(2) P.S.F. ¶ 92)  Schilling made a special effort to invite the other Compliance Consultants to meetings even though their attendance was not required.  (DOC. 43(2) P.S.F. ¶ 93)  Schilling excluded Plaintiff from meetings.  (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 46-47, 92)

In February 2010 Plaintiff observed Rita documenting Plaintiff's activities in a yellow notebook.  Human Resources policies encourage Morningstar employees to bring any concerns, complaints or questions to the immediate supervisor and if not satisfied with the supervisor's actions to take the matter to his supervisor or to HR. (DOC. 43(2) P.S.F. ¶ 94)  Plaintiff conferred with a black co-worker, Stephanie Woodruff,  about whether Plaintiff was being discriminated.  (DOC. 43(2) P.S.F. ¶ 108)  Plaintiff took her complaint about Rita taking notes on her activities to HR because she did not feel that Schilling would satisfy her.  She spoke to Cathi Rezy who said she talked to Rita who denied there was a notebook.  Even though Plaintiff told Rezy exactly where the notebook was Rezy said she did not find the notebook.  Plaintiff saw Rita return to her desk after the conversation she had with Rezy slamming things into her desk drawers and she locked the notebook in her cabinet and went home.  (DOC. 43(2) P.S.F. ¶ 95) When Plaintiff checked her employee records there was no record of her complaint or Rita's

response.  (DOC. 43(2) P.S.F. ¶ 96)   Plaintiff later discovered that Rita had complained against

her but no one asked for Plaintiff's response as they did with Rita when Plaintiff  complained

about Rita.  This was not a minor incident to Plaintiff but a direct action.  (DOC. 43(2) P.S.F. ¶

97)  After the complaint on Monday, February 8, when Plaintiff arrived at the office, Scott called

her into a conference room and told her that Rita would be working on a different floor.  Plaintiff

told him she had no problem working with Rita she just wanted Rita to stop what she was doing.

Plaintiff was not giving any option. (DOC. 43(2) P.S.F. ¶ 98)

     Within two weeks of Plaintiff's complaint Scott Schilling instituted for the first time written

performance reviews.  (DOC. 43(2) P.S.F. ¶ 99)  Plaintiff  received a negative review.  (DOC.

43(2) P.S.F. ¶ 100)

     One of Plaintiff's duties as a Compliance Consultant was doing e-mail reviews. (DOC. 43(2)

P.S.F. ¶ 101)   As part of the discovery requests submitted by Defendant to Plaintiff  Defendant

requested documents relied upon, considered, referred to, reviewed, or used in preparing answers

to interrogatories and generally all documents reviewed by Plaintiff. (DOC. 43(2) P.S.F. ¶ 102)

On November 19, 2010, Plaintiff responded to Defendant's request for production.   (DOC. 43(2)

P.S.F. ¶ 103)   On December 16, 2010, Defendant delivered a letter to Plaintiff advising her that

they had commenced an investigation into violation of the Code of Ethics based on e-mails

Plaintiff produced pursuant to Defendant's discovery requests.  (DOC. 43(2) P.S.F. ¶ 104)   The

e-mails being investigated involved information plaintiff found when she researched to find e-

mails between her and Ibbotson employees as part of an assignment by using her name "Doris."

(DOC. 43(2) P.S.F. ¶ 105)  The only person who Plaintiff shared the e-mails with was her

attorney.  (DOC. 43(2) P.S.F. ¶ 106)  From the e-mails accidently discovered by Plaintiff using

methods she was required and authorized to use to perform her duties Plaintiff learned that the

other Compliance Officers were receiving more favorable salary treatment than Plaintiff and Plaintiff discovered a complaint by Rita against her. (DOC. 43(2) P.S.F. ¶ 107)      In fiscal Year 2009, Keeton's 2009 base salary was $68,000; Derner's was $70,000; and Bentzler's was $65,000.  (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶  30)  Effective July 2011 salaries were as follows: $70,000 for Keeton; $73,000 for Derner; and $70,150 for Bentzler.   (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 35)  On February 1, 2011, Rezy sent a letter to Plaintiff indicating Plaintiff had exercised poor judgment.  (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 79)

    Plaintiff had a stroke on March 9, 2010 and has been on disability leave since then. (DOC. 43(2) P.S.F. ¶ 36, 109)  Plaintiff sued her employer for race discrimination and retaliation. (DOC. 36 D.S.F. AND DOC. 43(2) P.S.F. ¶ 3)


## RULE 28(a) SUMMARY OF ARGUMENT

        Pursuant to Federal Rule of appellate Procedure 28 (a)(5) Plaintiff submits this summary of Argument.

        Plaintiff filed an action in District Court.  Defendant filed a motion for summary judgment.  Because of Plaintiff's attorney's chronic health Plaintiff was late filing her response and sought leave to do so instanter prior to any ruling.   The District Judge granted summary judgment to Defendant and denied Plaintiff leave to file her response instanter as "moot" even though there had been no ruling prior to the motion for leave to file instanter.  Plaintiff asserts this was an error.  In addition, material issues of facts existed with regard to the claims made by plaintiff which precluded summary judgment on those claims.  The determination of the District Court, therefore, to enter judgment for Defendant on all claims was error.

STATEMENT OF STANDARD OF REVIEW

The determination to deny Plaintiff leave to file her response to the Defendant's motion for summary judgment because the issue was "moot" was an error and this court reviews issues of mootness de novo.  All other matters in this case were determined on summary judgment and this court reviews such determinations de novo.

ARGUMENT

III.  THE DISTRICT COURT ERRONEOUSLY RULED THAT PLAINTIFF'S MOTION FOR LEAVE TO FILE HER RESPONSE TO THEMOTION FOR SUMMARY JUDGMENT INSTANTER WHERE THE MOTION WAS FILED PRIOR TO ANY RULING ON SUMMARY JUDGMENT.

After Defendant filed its motion for summary judgment and prior to any ruling on it Plaintiff sought leave to file her response instanter indicating she failed to timely file the response due to her attorney's chronic illness.  (DOC. 43, 44)  The district court ruled the issue was moot.  (DOC. 48)  This was clearly erroneous.

"The issue of whether a case is moot is a question of law that we review de novo." *Mattern v. Secretary for the Department of Corr.,* 494 F.3d 1282, 1285 (11th Cir. 2007).   An issue is not moot unless there are no longer any live claims against the defendant. *United States Parole Commission v. Geraghty*, 445 U.S. 388, 404 (1980); *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 755-56 (1976).

In the case of  *Weismueller v. Kosobucki,*  571 F.3d 699, 705 (7th Cir. 2009), the court citing *MainStreet Organization of Realtors v. Calumet City*, 505 F.3d 742, 744 (7th Cir.2007), said that "as long as there is some nonnegligible, nontheoretical, probability of harm that the

plaintiff's suit if successful would redress  .  , the fact that a loss or other harm on which a suit is

based is probabilistic rather than certain does not defeat standing."    "A case is moot when the

issues presented are no longer 'live' or the parties lack a legally cognizable interest in the

outcome."  *Soliman v. United States ex rel. INS*, 296 F.3d 1237, 1242 (11th Cir. 2002)

When Plaintiff filed her motion to respond instanter there were remaining issues

presented and the case was live.  For this reason the finding that the issue was moot is clearly

erroneous.

## IV.  THE COURT ERRED IN RULING THAT SUMMARY JUDGMENT WAS APPROPRIATE IN THIS CASE

### A. Summary Judgment Standards

In the case of *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986), the U.S. Supreme Court made it

clear that where there are disputes over facts that might affect the outcome of the suit under the

governing law those disputes will properly preclude the entry of summary judgment under Rule 56(

c}.  477 U.S. 242 at 248   Where a reasonable jury could find for the nonmoving party summary

judgment cannot be entered.  477 U.S. at 248   "The issue of material fact required by Rule 56( c ) to

be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of

the party asserting its existence;  rather, all that is required is that sufficient evidence supporting the

claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of

the truth at trial."  477 U.S. at 248-9  Rule 56 (c ) does not authorize trial by affidavits and

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences

from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary

judgment or for a directed verdict.  The evidence of the non-movant is to be believed, and all

justifiable inferences are to be drawn in his favor." 477 U.S. at 255

Summary judgment standards are applied  rigorously in employment discrimination cases such as

this because intent and credibility are crucial issues. *Courtney v. Biosound*, 42 F.3d 414, 419 (7th

Cir.1994).  On summary judgment the court must construe all facts and reasonable inferences in

favor of the non-moving party.  *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir.1995).  The

facts asserted by the non-moving party must be accepted as true.  *United States v. Diebold, Inc.*, 369

U.S. 654, 655 (1962) ;  *Williams v. Anderson*, 959 F.2d 1411, 1413 (7th Cir.1992).  "Summary

judgment is improper in a discrimination case where a material issue involves any weighing of

conflicting indications of motive and intent."  *Kephart v. Inst. Of Gas Tech.,* 630 F.2d 1217, 1218 (7th

cir. 1980)   In a case cited by Defendant, *Grana v. Illinois Department of Transportation,* 232

F.Supp. 2d 879 at 884, (N.D. Ill., 2002) Judge Castillo noted:  "Credibility determinations, weighing

evidence, and drawing reasonable inferences are jury functions, not those of a judge deciding a

motion for summary judgment… In an employment discrimination suit, where credibility and intent

are crucial issues, these standards are applied with added rigor."

## B.   The Lilly Ledbetter Act

On January 29, 2009, President Obama signed The Lilly Ledbetter Fair Pay Act of 2009 into law,

which affects federal pay discrimination claims.  42 U.S.C. § 2000e-5(e)(3)(A) Congress drafted the

Act to overturn the controversial 2008 United States Supreme Court decision in *Ledbetter v. The*

*Goodyear Tire and Rubber Company,* 550 U.S. 618 (2007).  The new law, *inter alia,* applies to pay

discrimination based on an employee's federal protected rights under Title VII of the Civil Rights Act

of 1964, the Age Discrimination in Employment Act of 1967, the Americans with Disabilities Act of

1990, and the Rehabilitation Act of 1973.  The race, color, religion, sex, national origin, disability, or

age determine the protection the Act gives.  The Act expands the definition of an unlawful

discriminatory pay practice beyond discrete "decisions" to "other practices;" and applies retroactively

to May 7, 2007.  Under the Ledbetter Act, an "unlawful employment practice" occurs when 1.  a

discriminatory compensation decision or other practice is adopted; 2.  an individual becomes subject

to a discriminatory compensation decision or other practice; or 3. an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice. The statute of limitations for an employee to bring a pay discrimination charge will not expire as long as an employee continues to receive compensation or benefits that result from a previous discriminatory decision. The Ledbetter Act increases employer's exposure to pay discrimination claims for allegedly discriminatory decisions regardless of when the employer made the pay decision, because the Act renews the statute of limitations each time the employee receives pay affected by an allegedly discriminatory decision. In addition, the Ledbetter Act expands the type of conduct that is considered pay discrimination beyond intentional pay discrimination by considering it an unlawful employment practice when an employee is subject to or affected by a discriminatory compensation decision.

C. Doris E. Keeton can establish discrimination to a jury.

Discrimination can be established by either direct evidence or by indirect evidence. Plaintiff can establish her case both ways.

i. Direct Proof

In the case of *Sylvester v. SOS Children's Villages Illinois, Inc.*, 453 F.3d 900, (7th Cir 2006) the Seventh Circuit expounded on the direct proof method. There Chief Judge Posner noted. "The usual way in which a plaintiff tries to establish a prima facie case (that is, a case strong enough to withstand summary judgment for Defendant) of retaliation is by an adaptation of the *McDonnell Douglas* test. As explained in *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 644 (7th Cir. 2002), this 'requires the plaintiff to show that after filing the charge only he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though he was performing his job in a satisfactory manner.' This method of establishing a prima facie case requires proof of similarly situated employees and of the plaintiff's performing his

21

job satisfactorily.  This method is called 'indirect; the alternative -the 'direct'-method of establishing a prima facie case of retaliation requires the plaintiff 'to present direct evidence (evidence that establishes without resort to inferences from circumstantial evidence) that he engaged in protected activity…and *as a result* suffered the adverse employment action of which he complaints…Read literally, the passage quoted from *Stone* would defeat Sylvester's use of the 'direct' method because the passage says that the method requires 'direct *evidence*,' [a proposition] without resort to inferences from circumstantial evidence.'  This is misleading dictum.  What is true is that the direct method does not utilize specific circumstantial evidence that the plaintiff presents when he uses the indirect method of establishing discrimination.  But if he can prove by means of circumstantial evidence that 'that he engaged in protected activity…and as a result suffered the adverse employment action of which he complains,' that is fine, as most of our cases, sensibly disregarding the dictum in *Stone*, properly assume"  453 F.3d at 901  The court in *Sylvester* went on to state, "A case of discrimination can likewise be made by assembling a number of pieces of evidence none meaningful in itself, consistent with the proposition of statistical theory that a number of observations each of which supports a proposition only weakly can, when taken as a whole, provide strong support if all point in the same direction:  a number of weak proofs can add up to a strong proof.."  453 F. 3d at 903  In *Sylvester* the court found that "a reasonable jury could conclude that the accusations of sexual harassment in the letter signed by Sylvester were a cause of her being fired.  No more is necessary to show that she established a prima facie case using the 'direct' method of proof."

    In the instant case Plaintiff's white co-worker Compliance Consultants with less seniority and less experience made more than Plaintiff, the only black Compliance Consultant.  This is patently unreasonable and counter intuitive.  In *Cooper v. Southern Co.,* 390 F.3d 695, 743 (11th Cir. 2004), the court explained:  "Seniority may constitute a legitimate, non-discriminatory justification for differences in compensation. *See, e.g., Irby v. Bittick,* 44 F.3d 949, 956 & n.10 (11th Cir. 1995);

*Mulhall v. Advance Sec., Inc.,* 19 F.3d 586, 599 (11th Cir. 1994)."  Seniority and experience normally work to the employee's credit justifying a higher compensation rate rather than a lower one.

   When Plaintiff complained of being spied on by a white Compliance Consultant and was concern that her white supervisor would not handle the matter satisfactorily, the matter was not taken seriously, considered just a "dust-up" and brushed aside.  Contrary to the way Plaintiff's complaint was handled when a white Compliance Consultant complained against Plaintiff she was not even given notice or an opportunity to respond.  Within two weeks of Plaintiff's complaint against the white Compliance Consultant a brand new procedure was instituted of written performance evaluations.  In the past Plaintiff was always advised verbally over the years that she was doing a good job.  After Plaintiff complained she was given a negative evaluation for the first time.

   When Plaintiff was performing her required duties researching e-mails she discovered for the first time that she was being paid less than her white counterparts and that a white Compliance Consultant had complained against her.  Plaintiff only showed these e-mails to her Lawyer.  After this lawsuit was filed pursuant to discovery requests Plaintiff's attorney turned the e-mails over to Defendant's attorney.  Immediately afterwards Plaintiff received a letter from Defendant advising her that she was being investigated for ethics violations.  Plaintiff submitted to an interview making it clear she did not engage in any violation and that she used the e-mail system using her own name to find a memo required for her job.  Nonetheless she received a letter which would remain in her personnel file from HR indicating that she had used "poor judgment."

   These facts show directly how differently Plaintiff was treated than white Compliance Consultants.  A reasonable jury could conclude that the reason for Plaintiff's treatment was at least in part due to her race.  For all the above reasons Plaintiff can establish by direct proof that she was discriminated against.

**ii.** Indirect Proof of Discrimination

Plaintiff may also establish a discrimination claim by the indirect method by establishing a Prima Facie Case that she : (1) Is a member of a protected class ; (2) Was performing well enough to meet her employer's legitimate expectations: (3) Suffered an adverse employment action : and (4) that similarly situated employees outside her protected class were treated more favorably. *Eaton v. Indiana Dept. Of Corrections,* (No. 10-3214. September, 2011)  ___ F.3d ___ (7th Cir. 2011) (included in appendix) If she establishes all four elements, the burden shifts to the employer to offer a legitimate, non-discriminatory reason for adverse action. If the employer meets its burden, the plaintiff must demonstrate the reasons offered were pretext for discrimination.

1**.** Prima Facie Case

There is no question that Plaintiff can establish she is a member of a protected class, African American. There is also no question that she was performing well enough to meet her employer's legitimate expectations, since no attempt was made to terminate her and she had been told as much. There is also no question that Plaintiff was making less money than her white counterparts who had less experience and less seniority. (PSF 33, 35) The first three elements of the Prima Facie Case are admitted.

Defendant argues only concerning whether the three Compliance Consultants are similarly situated and bases the dissimilarity solely on the peer reviews. The argument is specious because only Plaintiff was rated by Ibbotson employees. The three Compliance Consultants performed the same functions, were interchangeable, reported to the same supervisor and therefore were similarly situated. Having established all the elements Plaintiff has proven a Prima Facie Case.

In the recent case of *Eaton v. Indiana Dept. Of Corrections,* (No. 10-3214. September, 2011) ___ F.3d ___ (7th Cir. 2011) (included in appendix) the court noted that "Summary judgment is appropriate only where it is clear that no reasonable jury could find that the similarly situated requirement has been satisfied. See *Lunini v. Grayeb*, 395 F.3d 761, 770 n. 6 (7th Cir.2005) (citing

*McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir.2004); *Bell v. Duperrault*, 367 F.3d 703, 709–10 (7th Cir.2004); Purze v. Vill. of Winthrop Harbor, 286 F.3d 452, 455–56 (7th Cir.2002); and Harlen Assoc. v. Vill. of Mineola, 273 F.3d 494, 499 n. 2 (2d Cir .2001)). In general, "whether individuals are similarly situated is a factual question for the jury." Id."

**2.** Plaintiff can establish the Illegitimacy of Defendant's alleged Justification for its Actions

The Seventh Circuit in the case of *Gordon v. United Airlines*, 246 F3d 878 (7th Cir. 2001) made it clear that summary judgment is not appropriate where ill-defined and vague standards are applied in such a way that employees in a protected class are treated differently than those not in that class. In the instant case Defendant had no uniform standards for its salary decisions which were made on a completely *ad hoc* basis contrary to normal and accepted reasons for compensation differences between employees. Defendant gives no legitimate reason why Plaintiff's years of loyalty would work against her so that she made less than her white Counterparts who had less seniority and less experience. Applying the *Gordon* case to the facts in this case make it clear that summary judgment is no more appropriate here than in *Gordon.* '[i]f the employee offers specific evidence from which the finder of fact may reasonably infer that the proffered reasons do not represent the truth, the case then *turns* on the credibility of the witnesses.' *Collier v. Budd Co*., 66 F.3d 886, 893 (7th Cir. 1995). In such circumstances, the employee creates 'a factual issue as to whether the employer's explanation is credible or merely a pretext for discrimination.' *Day*, 28 F.3d at 1461. '[W]hen the sincerity of an employer's asserted reasons for discharging an employee is cast into doubt, a fact finder may reasonably infer that unlawful discrimination was the true motivation . . . .' Adreani, 154 F.3d at 395 (citations omitted). *Gordon v. United Airlines,* 246 F.3d at 880-881.

Viewing the evidence in the light most favorable to the Plaintiff as summary judgment standards require precludes summary judgment in this case where a Prima Facie Case has been established.

25

**3.** Plaintiff can support her claims of discrimination by a Mosaic of evidence

Plaintiff's case must be viewed as a whole not by attacking each component part and arguing that the actions taken do not suffice to prove the adverse action required. As the court noted in *Sylvester, supra,* "A case of discrimination can likewise be made by assembling a number of pieces of evidence none meaningful in itself, consistent with the proposition of statistical theory that a number of observations each of which supports a proposition only weakly can, when taken as a whole, provide strong support if all point in the same direction: a number of weak proofs can add up to a strong proof.." 453 F. 3d at 903  Thus the numerous instances of differential treatment experienced by Plaintiff as compared to her white co-workers all point in the same direction. No more is necessary to show that she established a prima facie case and weighing evidence is not the job of the judge on summary judgment. All reasonable inferences are to be drawn in favor of the plaintiff.

### D. PLAINTIFF CAN ESTABLISH HER RETALIATION CLAIMS

#### 1. Retaliation Based on Verbal Internal Complaint Opposing Discrimination

"The plaintiff may establish a prima facie case of retaliation and overcome defendant's motion for summary judgment using either the direct method or the indirect method.  Under the direct method, the plaintiff must present direct evidence of (1) a statutorily protected activity;  (2) an adverse action taken by the employer;  and (3) a causal connection between the two."

"Under the indirect method, the plaintiff must show that (1) she engaged in a statutorily protected activity;  (2) she performed her job according to her employer's legitimate expectations;  (3) despite her satisfactory job performance, she suffered an adverse action from the employer;  and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity.  [citations omitted]  If the plaintiff establishes these elements, the burden shifts to the defendant to come forward with a legitimate, non-invidious reason for its adverse action.  Id. Although the burden of production shifts to the defendant under this method, "the burden of persuasion rests at all times on the plaintiff."  [citations omitted]  Once the defendant presents a

legitimate, non-invidious reason for the adverse action, the burden shifts back to the plaintiff to show

that the defendant's reason is pretextual…. In *Stone*, we held that for a plaintiff proceeding under the

indirect method, causation would no longer be a part of her prima facie burden. *Stone*, 281 F.3d at

644 ("[P]laintiff so proceeding need not show even an attenuated causal link."). [citations omitted."

*Sitar v. Indiana Dept. of Transp.,*344 f.3d 720, 726-727 (7th Cir. 2003)

   Plaintiff complained to Scott Schilling and to HR that a white coworker was keeping records on

her activity. Plaintiff went to HR initially in order to oppose the discrimination she was being

subjected to because she noted how Scott Schilling was friendlier and more cooperative with her

white coworkers. She had discussed this discrimination with a black co-worker, to confirm that her

claims had merit. Within two weeks after Plaintiff made the report to HR Schilling initiated a written

performance evaluation which had never been used before. Before Plaintiff complained she only

received verbal performance evaluations and she was always told she was doing a good job. After

Plaintiff complained about her white coworkers treatment she received a negative evaluation while

her white coworkers received positive evaluations. Defendant admits these evaluations were used to

determine salary.

   Plaintiff's complaints to Scott Schilling were never reduced to writing and no copy was placed in

her personnel file. What is clear, however, and was known to Scott Shilling was that Plaintiff went

to HR with her complaint because of his favoritism toward the white Compliance Consultants.

Defendant argues that since no formal internal complaint charged discrimination it cannot be proven

that retaliation was taken against Plaintiff because she opposed discrimination. The argument is

without foundation. All of the cases cited by Defendant involve either complaints recorded by the

employer in writing or EEOC forms filed. There is no such writing in this case. See *Hatmaker v.

Memorial Medical Center,* 619 F.3d 741 (7th Cir. 2010); *Kodl v. Board of Educ, Sch. Dist. 45, Villa

Park,* 490 F. 3d. 558, 563 (7th Circ. 2007); *Sitar v. Indiana Dept. of Transp.,*344 f.3d 720, 727 (7th

Cir. 2003); and *Nagle v. Village of Calumet Park,* 554 E.3d 1106 (7th Cir. 2009) Moreover even if

there were a recorded formal complaint, the Seventh Circuit, in a case cited by Defendant, has said that "A purely internal investigation does not involve a 'charge,' or testimony and neither is it a 'proceeding' or a 'hearing.'" *Hatmaker, supra.,* 619 F,3d 741 at 749  In addition, like or reasonably related claims which may be reasonably expected to grow out of written claims may be included in retaliation claims.  *Sitar, Supra.,* 344 F.3d 720, 727 (7th Cir. 2003)  "An employee need not use the magic words "sex" or "gender discrimination" to bring her speech within Title VII's retaliation protections." *Sitar, Supra.,* 344 F.3d 720, 728 (7th Cir. 2003)  Nor does she have to use the word "race."

**2.**  Retaliation Based On Participation in EEOC Sanctioned Proceedings

After filing formal charges with EEOC Plaintiff received a right-to-sue letter from EEOC and filed in federal court.  As part of the discovery in this case Plaintiff tendered e-mails she obtained while performing the routine duties of her job which revealed that she had been treated differently than her white counterparts with regard to salary and with regard to how her complaints were treated. When Plaintiff's attorney disclosed the e-mails a letter was sent to Plaintiff that she was being investigated for ethics violations.  Plaintiff was interviewed and advised Defendant that she discovered the e-mails while performing routine job functions.  Despite this Plaintiff was sent a letter by HR which would go into her personnel file which said she had exercised "poor judgment" even though she violated no rule or ethical policy.

**3.**  Departure from policy establishes pretext

In *Brennan v. GTE Government Systems Corp.,* 150 F.3d 21, 29 (1st Cir. 1998), the court explained: "[d]eviation from established policy or practice may be evidence of pretext. See *Lattimore v. Polaroid Corp.,* 99 F.3d 456, 466-67 (1st Cir. 1996)."  In *Weinstock v. Columbia University*, 224 F.3d 33, 45 (2d Cir. 2000), the court held: "[d]epartures from procedural regularity . . . can raise a question as to the good faith of the process where the departure may reasonably affect the decision.'" *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 313 (2d Cir. 1997)  In *Floyd v. State of Missouri*

*Dept. of Social Services, Div. of Family Services*, 188 F.3d 932, 937 (8th Cir. 1999), the court

explained: An employer's failure to follow its own policies may support an inference of pretext.

In *Perdomo v. Browner*, 67 F.3d 140, 145 (7th Cir.1995) the court made it clear "Because a fact-

finder may infer intentional discrimination from an employer's untruthfulness, evidence that calls

truthfulness into question precludes a summary judgment."  The *Gordon* decision also referred to

non-seventh circuit cases which it applied to state "A showing that similarly situated employees

belonging to a different racial group received more favorable treatment can also serve as evidence

that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a

pretext for racial discrimination." *Graham v. Long Island R.R.,* 230 F.3d 34, 43 (2d Cir. 2000); and

also *Williams v. City of Valdosta*, 689 F.2d 964, 975 (11th Cir. 1982) ("It is undisputed, however,

that the City's adherence to its formal promotional policy was inconsistent and arbitrary at best. This

inconsistency supports the conclusion that resort to the examination requirement was a pretext for

singling out Williams for unfavorable treatment."  In *Reeves v. Sanderson Plumbing Products, Inc.*,

530 U.S. 133, 142-47, 154-155  (2000), the Supreme Court, stated "When the sincerity of an

employer's asserted reasons for discharging an employee is cast into doubt, a fact finder may

reasonably infer that unlawful discrimination was the true motivation." *Adreani v. First Colonial*

*Bankshares, Corp.*, 154 F.3d 389 at 395 (7th Cir. 1998) In such a case as here summary judgment is

therefore inappropriate

Conclusion

For all the above reasons the decision of the District Court must be reversed.


                              Respectfully submitted,
                              _/s/  Armand L. Andry_____
                              Attorney for Plaintiff

ARMAND L. ANDRY
ATTORNEY FOR PLAINTIFF
One South Dearborn, Suite 2100
Chicago, Illinois 60603
773/626-3058

**CERTIFICATE OF COMPLIANCE WITH**
**TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS,**
**AND TYPE STYLE REQUIREMENTS**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

__this brief contains less than 14,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii)

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

__this brief has been prepared in a proportionally spaced typeface using Microsoft word 2003, in 12 point times new roman type.

/s/ __Armand L. Andry _____

Attorney for __Plaintiff-Appellant_____

Dated: ____December 10, 2009_____

CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that all material required by Circuit Rule 30(a) and (b) are included in the appendix.


        __/s/ <u>Armand L. Andry</u>_____

        Attorney for Plaintiff-Appellant

**CERTIFICATE OF SERVICE**

     I, Armand L. Andry, an attorney, certify that I served two copies of the foregoing Brief and required short appendix of Plaintiff-Appellant along with a digital version of the brief through the court's ECF system on Defendant by placing them in an envelope addressed to Lisa A. McGarrity, Abizer Zanzi, Franczek Radelet P.C., 300 South Wacker Drive, Suite 3400 Chicago, IL 60606, on September 12, 2011.

                      /s/ Armand L. Andry_____

APPENDIX

In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 10-3214

AUTUMN EATON,

*Plaintiff-Appellant,*

*v.*

INDIANA DEPARTMENT OF CORRECTIONS,
PENDLETON JUVENILE CORRECTIONS FACILITY,

*Defendant-Appellee.*

---

Appeal from the United States District Court
For the Southern District of Indiana, Indianapolis Division.
No. 1:08-cv-01318—JMS-DML—**Jane E. Magnus-Stinson**, *Judge.*

---

ARGUED FEBRUARY 7, 2011—DECIDED SEPTEMBER 9, 2011

---

Before ROVNER and WOOD, *Circuit Judges*, and
GOTTSCHALL, *District Judge.*[*]

GOTTSCHALL, *District Judge.* Autumn Eaton sued her
employer, the Indiana Department of Corrections,

---

[*] The Honorable Joan B. Gottschall, United States District
Judge for the Northern District of Illinois, sitting by designation.

Pendleton Juvenile Corrections Facility ("DOC"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, alleging that DOC discriminated against her on the basis of gender when it terminated her employment.

The district court granted summary judgment in favor of DOC, and Eaton's appeal followed. On appeal, Eaton argues that the district court erroneously granted summary judgment to DOC because Eaton presented sufficient evidence to create a material issue of disputed fact under the *McDonnell Douglas* indirect method of proof analysis. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

We review the district court's grant of summary judgment *de novo*. *Ellis v. DHL Express Inc. (USA)*, 633 F.3d 522, 525 (7th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We must draw all reasonable inferences for Eaton, the non-moving party, and view the record in a light most favorable to her. *Ellis*, 633 F.3d at 525. Based on the record before us, we conclude that sufficient evidence exists to preclude summary judgment, and we reverse the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

Eaton worked as a correctional officer for DOC from April 2006 until March 2008. When Eaton began her employment, she was assigned to watch tour duty, which

required walking around her assigned unit to monitor the inmates. In the spring of 2007, Eaton was reassigned to work in a control room, where she monitored residents and staff via a computer. As a result, Eaton was no longer required to walk or to have any physical contact with the inmates.

In or around September 2007, Eaton received a warning for excessive absenteeism. She was told that if she did not improve her attendance, she would be moved from her current (and, in her view, more desirable) schedule, which involved alternating between one "short week" of two twelve-hour shifts and one "long week" of five twelve-hour shifts, to a schedule of five eight-hour days every week. In addition, the new schedule could require up to four hours of mandatory overtime each day; thus, Eaton theoretically could have been required to work five twelve-hour days each week under the new schedule.

At some point in late 2007, she was switched to this five-day-a-week, eight-hour-a-day schedule. She testified that the schedule shift was discipline for using too many sick days, although she also testified that she only used sick time she had accrued prior to taking the time off.[1]

Eaton never worked under the new schedule. Immediately after being reassigned, she took a month or two of

---

[1] Eaton apparently filed a grievance with DOC on September 21, 2007 as a result of this shift change, but the record does not indicate what happened with the grievance.

(presumably employer-approved)[2] leave under the Family Medical Leave Act ("FMLA"). When she returned, she was put back on the twelve-hour-a-day shifts with alternating long (five day) and short (two day) weeks. (*See* Pl.'s Designation of Evidence, Ex. D-E.) In November 2007, shortly after her return, Eaton—who suffered from a degenerative back condition—was in an automobile accident. That accident aggravated her back injury to the point where it restricted some of her work-related activities. In particular, she was given certain restrictions by her physician, but she did not immediately disclose those restrictions to DOC for fear of being returned to a five-day-a-week, eight-hour-a-day shift.[3]

In early 2008, Eaton had a "pre-deprivation hearing" for refusing overtime.[4] At this point, she disclosed her restrictions and stated that she had delayed doing so for fear of being switched to the undesirable shift. Eaton was told that she could submit her restrictions and her schedule would not be altered. She did so.

In early March 2008, Eaton used vacation time to visit her brother, who had been injured in a motorcycle acci-

---

[2] 9 C.F.R. § 825.300(d)(1) ("The employer is responsible in all circumstances for designating leave as FMLA-qualifying, and for giving notice of the designation to the employee as provided in this section.").

[3] Eaton stated that she was restricted from bending or walking excessively, lifting over ten pounds, or working more than a twelve-hour shift.

[4] The record does not make clear what a "pre-deprivation hearing" is.

dent. When she returned to work, Eaton learned that she had been removed from control room duty and reassigned to watch tour duty. Despite her request to be assigned to a different duty due to her severe back pain, Eaton was assigned watch tour duty in Unit D-11. On March 12, 2008, Eaton was assigned to watch tour duty in Unit E-16, which she called "the worst unit a correction[al] officer can work." When Eaton repeatedly refused the E-16 assignment, stating both that she physically could not do the job and that it violated her medical restrictions, her supervisor, Lieutenant Bensheimer, asked for her belt and badge. Begging to be placed in another assignment and insisting that she did not wish to quit, Eaton ultimately turned over her belt and badge and left the facility.

Immediately thereafter, Eaton called her mother, Micki Neal, who was also a correctional officer employed by DOC. Neal met with Bensheimer, and Bensheimer told Neal that Eaton could return for her next shift. Neal communicated this information to Eaton, but shortly thereafter, Bensheimer told Neal that Eaton would not be permitted to return. A gate closure order was issued so that when Eaton tried to return for her next shift, she was barred from entering the facility. Eaton never returned to work.

Eaton filed suit, alleging that DOC's actions violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the FMLA, 29 U.S.C. § 2601 *et seq.*, and Title VII's

gender discrimination prohibition.[5] DOC moved for summary judgment, arguing that Eaton could not establish three of the four elements of her *prima facie* case of discrimination under Title VII: first, there was no adverse action because she quit; second, she was not meeting her employer's legitimate job expectations because she refused to work in her assigned area; and third, there was no evidence that she was treated differently from employees outside the protected class who refused a work assignment. (*See* Mem. in Supp. of Mot. for Summ. J. at 16.) In support of its motion, DOC submitted only two pieces of evidence: an excerpt from Eaton's deposition and Eaton's complaint. DOC did not submit any evidence as to who made the decision to terminate Eaton's employment or any evidence of the reasons underlying any such decision. The record is silent as to both of these issues.

In her opposition, Eaton argued that she had presented sufficient evidence of gender discrimination to survive summary judgment. Under the *McDonnell Douglas* indirect method, a plaintiff must first establish a *prima facie* case by showing that "(1) she is a member of a protected class; (2) her performance met her employer's legitimate expectations; (3) despite this performance, she was subjected to an adverse employment action; and (4) her employer treated similarly situated

---

[5] Eaton explicitly abandoned her ADA and FMLA claims during summary judgment briefing, leaving only the Title VII claim at issue.

employees outside of the protected class more favor-ably." *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 559 (7th Cir. 2007) (citing *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006)). If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to "articulate a legitimate, non-discriminatory reason for the adverse employment action." *South v. Ill. Envtl. Prot. Agency*, 495 F.3d 747, 751 (7th Cir. 2007). Once the employer articulates a non-discriminatory reason for its action, the burden shifts back to the plaintiff to present evidence showing that the employer's purported reason was pretextual. *Id.*

Eaton argued that she had met DOC's expectations and had been subject to an adverse employment action. She identified male correctional officers whom she contended were similarly situated and had been treated more favorably. In particular, she identified Dennis Curtis, the male comparator at issue here. Eaton also argued that DOC's purported legitimate reason for her termination (that she quit) was pretextual. In support, Eaton submitted affidavits from herself, Micki Neal, and Dennis Curtis; portions of her deposition testimony; and a few employment-related documents, such as letters of commendation she had received.

In reply, DOC asserted that Curtis was not similarly situated, both because his refusal of a DOC assignment was distinguishable from Eaton's refusal and because his prior disciplinary record differed from Eaton's. DOC further argued that even if Eaton had demonstrated a *prima facie* case of discrimination, DOC had a legitimate,

non-discriminatory reason for terminating Eaton's employment: Eaton "refused to do her assigned work and quit." (Def.'s Reply in Supp. of Mot. for Summ. J. at 7.)[6] In addition, DOC argued that Eaton had no evidence establishing pretext.

The district court granted DOC's summary judgment motion, ruling that Eaton had failed to establish a *prima facie* case of gender discrimination under the indirect method of proof.[7] *See Eaton v. Indiana Dep't of Corr.*, No. 08-cv-01318, 2010 WL 3526266 (S.D. Ind. Sept. 3, 2010). Assuming without deciding that Eaton had suffered an adverse employment action and that she had met DOC's legitimate expectations, the district court found that Eaton's asserted male comparators were not similarly situated. *See Eaton*, No. 08-cv-01318, 2010 WL 3526266, at *4-6.

On appeal, Eaton argues that the district court erred in granting summary judgment. Eaton again argues that she established a *prima facie* case because she was meeting DOC's legitimate job expectations, she suffered an adverse employment action, and Curtis was a

---

[6] DOC drove this point home a number of times. (*See* Def.'s Mem. in Supp. of Mot. for Summ. J. at 17 ("[T]here is no evidence establishing pretext. Eaton quit. There is no evidence of any 'phony reason' for Eaton's termination (which was not even a termination).")

[7] The district court also ruled that Eaton failed to set forth a *prima facie* case under the *McDonnell Douglas* direct method of proof; Eaton does not challenge this finding on appeal.

similarly situated male comparator whom DOC treated more favorably. DOC concedes that genuine issues of material fact preclude summary judgment on the issues of whether Eaton suffered an adverse employment action and whether she met DOC's legitimate job expectations. DOC argues only that Eaton failed to establish a *prima facie* case because Curtis was not similarly situated. (*See* Br. of Appellee at 10.)

As noted above, in DOC's motion for summary judgment it argued that Eaton "refused to do her assigned work and quit." DOC now argues for the first time on appeal that it fired Eaton based on her disciplinary history and her refusal of an assignment, and further claims that differences between Eaton's and Curtis's disciplinary history prevent Curtis from being an appropriate comparator. However, with the exception of Bensheimer telling Neal that Eaton could not return to work and the gate closure order, nothing in the record indicates that DOC ever made a decision to terminate Eaton's employment—there is no evidence as to when that decision was made, who made the decision, or why.

## II. Analysis

Title VII prohibits an employer from terminating an employee because of the employee's gender. *See* 42 U.S.C. § 2000e-2(a)(1). Under the *McDonnell Douglas* indirect test, a plaintiff must satisfy four requirements to establish a *prima facie* case of gender discrimination. *See McDonnell Douglas*, 411 U.S. at 802. Eaton has satisfied the first three requirements because DOC admits (and

the record supports) that Eaton is a member of a pro-
tected class and that there are genuine issues of material
fact as to whether Eaton met DOC's legitimate expecta-
tions and whether she suffered an adverse employment
action. Therefore, the issue before this court is whether
Eaton presented sufficient evidence to allow a rea-
sonable factfinder to find that a similarly situated male
employee, Dennis Curtis, received more favorable treat-
ment than Eaton. Based on the record before us, we
find that a reasonable factfinder could conclude that
Eaton and Curtis were similarly situated, and that there-
fore Eaton established her *prima facie* case. Although
the parties argue the issue of pretext, the district court
did not decide that issue, and the record below—con-
taining no evidence of who made the decision to
terminate Eaton or why—does not permit the issue of
pretext to be resolved by this court.

A.  *A Reasonable Factfinder Could Conclude that a Similarly
    Situated Male Employee Received More Favorable Treat-
    ment than Eaton.*

The similarly situated analysis requires a context-based
examination of all relevant factors. *South*, 495 F.3d at 752-
53 (citing *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 404
(7th Cir. 2007) (holding that the plaintiff failed to show
that comparators with the same employment responsi-
bilities and the same supervisor were similarly situated,
as the plaintiff failed to show they had similar employ-
ment history or had otherwise engaged in similar con-
duct)). It "ought not be construed so rigidly or inflexibly

that it [becomes] a useless analytical tool." *Id.* at 752. Nevertheless, "the comparators must be similar enough that any differences in their treatment cannot be attributed to other variables." *Silverman v. Bd. of Educ. of Chi.*, 637 F.3d 729, 742 (7th Cir. 2011). This generally requires the plaintiff to show that the comparator had the same supervisor, was subject to the same employment standards, and had engaged in conduct similar to that of the plaintiff. *See South*, 495 F.3d at 752. Because the similarly situated analysis does not require numerosity, the plaintiff need offer evidence as to only one similarly situated comparator. *Humphries*, 474 F.3d at 406-07. Overall, "the inquiry simply asks whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." *Id.* at 405.

Here, the district court rejected Curtis as a similarly situated comparator based on differences between Eaton's and Curtis's conduct in refusing an assignment and differences between Eaton's and Curtis's disciplinary history. We address both findings in turn.

### 1.  *Refusal of a Work Assignment*

Eaton refused a work assignment on March 12, 2008, when she was assigned to watch tour duty in Unit E-16. Eaton, accompanied by Neal, spoke to Lieutenant Bensheimer prior to her assignment regarding her desire not to work in that unit. Eaton requested a different unit

assignment, telling Bensheimer that she could not work in Unit E-16 due to her physical limitations and medical restrictions. Although Neal offered to swap assignments with Eaton, Bensheimer denied Eaton's request to switch assignments.

At some point, Neal left while Eaton and Bensheimer continued to talk. When Eaton continued to refuse her new assignment, Bensheimer asked for her belt and badge. Eaton responded by saying that she did not want to quit. When Bensheimer told her that she had to work in Unit E-16 or turn in her belt and badge, Eaton gave the items to Bensheimer and left the facility. Shortly thereafter, Eaton called Neal and told her that Bensheimer had taken her belt and badge. Neal spoke with Bensheimer, who told her that, because Eaton was so upset, Eaton should go home and return on her next scheduled workday. Neal told Eaton about this conversation, but several hours later, Bensheimer told Neal that Eaton would not be allowed to return to DOC. When Neal informed Eaton of this development, Eaton immediately called to speak to Bensheimer, but was unable to contact him. When Eaton attempted to return for her next scheduled shift, she was informed that a gate closure order denied her entrance to the facility.

Curtis was employed at DOC as a correctional officer from December 2006 through September 2007. While under the supervision of Bensheimer, Curtis reported to work and refused an assignment to a new unit. When Bensheimer insisted that Curtis work the new assignment, Curtis became angry, told Bensheimer that he quit, and left the facility. Curtis returned to work about

forty-five minutes later, and Bensheimer permitted him to return to his preferred assignment without any discipline.

The district court's determination that Eaton's and Curtis's conduct in refusing a work assignment was too dissimilar to provide a basis for comparison was based on three factors: (1) unlike Curtis, Eaton never actually quit, but simply left the facility, (2) Curtis did not turn in his belt or badge when he left, whereas Eaton did, and (3) Curtis returned to work less than an hour later and resumed working, whereas Eaton only attempted to return at the start of her next shift.[8] *See Eaton*, No. 08-cv-01318, 2010 WL 3526266, at *5.

In our view, the conduct of Eaton and Curtis in refusing an assignment is sufficiently similar to allow a jury to decide whether their disparate treatment was based on gender discrimination. While their situations are not identical, we cannot say that, as a matter of law, Eaton's conduct was more blameworthy than Curtis's. If anything, Eaton's conduct could be viewed as less deserving of termination, as she made clear that she did not want to quit and it is undisputed in this record that she refused the new assignment based on her physical limitations and medical restrictions.

This court's decision in *Humphries* is instructive. In *Humphries*, the plaintiff sued his employer, Cracker

---

[8] Eaton did so at Bensheimer's instruction: he specifically told Neal that Eaton should go home and to return on her next scheduled workday.

Barrel, alleging racial discrimination and retaliation after Cracker Barrel fired him for allegedly leaving the store safe unlocked at night. 474 F.3d at 389-90. The plaintiff had offered evidence of a similarly situated comparator who held the same position with the same duties, supervisor, and ultimate decisionmaker, and who had a similar employment performance history. *Id.* at 406. But while the plaintiff had been fired for leaving a safe unlocked at night, his putative comparator left a safe open during the day and was not fired.

Although we agreed that a distinction existed between leaving a safe unlocked at night and leaving a safe unlocked during the day, we concluded that this was "a distinction without much difference." *Id.* Both employees had violated Cracker Barrel policy that the safe could not be left unlocked and unattended at any point during the twenty-four hour day. The issue was "whether there [were] sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." 474 F.3d at 405. After undertaking a "flexible," "common-sense" inquiry, we found that the putative comparator was similarly situated, because there were enough similarities between the two employees to "isolate the critical independent variable: complaints about discrimination." *Id.* at 405-06.

Thus, summary judgment is appropriate only where it is clear that no reasonable jury could find that the

similarly situated requirement has been satisfied. *See Lunini v. Grayeb*, 395 F.3d 761, 770 n.6 (7th Cir. 2005) (citing *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004); *Bell v. Duperrault*, 367 F.3d 703, 709-10 (7th Cir. 2004); *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455-56 (7th Cir. 2002); and *Harlen Assoc. v. Vill. of Mineola*, 273 F.3d 494, 499 n. 2 (2d Cir. 2001)). In general, "whether individuals are similarly situated is a factual question for the jury." *Id.*

Eaton's refusal of a work assignment was similar enough to Curtis's refusal that a reasonable factfinder could determine that they were similarly situated. As in *Humphries*, Eaton was not required to show that Curtis's refusal to work was *identical* to hers. *See Humphries,* 474 F.3d at 406. Eaton and Curtis both refused a work assignment from the same supervisor and left the facility. Both returned to work or attempted to return to work promptly or when instructed to do so by their supervisor. And as noted, Eaton's behavior reasonably could be viewed as less culpable than Curtis's. Under the flexible, common-sense standard described in *Humphries,* there is more than enough similarity on this point to allow the matter to proceed to a jury.

### 2. *Disciplinary History*

In addition to the refusal of a work assignment, the district court found that Curtis was not similarly situated because his disciplinary history was not comparable to Eaton's: Eaton had been disciplined for excessive

absenteeism and reprimanded for failing to attend a
mandatory training session, whereas Curtis had been
disciplined for refusing to work overtime and for dis-
obeying a direct order to turn off a television set
while inmates were being disciplined.[9] (*See* Aff. of
Dennis Curtis, Pl.'s Designation of Evidence, Ex. B.)

   DOC relies on *Amrhein v. Health Care Services Corp.*, 546
F.3d 854 (7th Cir. 2008), to support its argument that
Curtis cannot be considered similarly situated to Eaton
because he did not have a similar disciplinary history. In
*Amrhein*, while noting that a similarly situated employee
"need not be 'identical,'" we rejected a potential compara-
tor who had the same supervisor and was subject to the
same standards as the plaintiff because there was no
evidence that the comparator had additional conduct
violations. *Amrhein*, 546 F.3d at 860. Indeed, the plaintiff
had provided minimal evidence that any of the putative
comparators had a similar disciplinary history. *Id.* at 858-
60. "Without a similar disciplinary history, [the compara-
tor] cannot be considered 'similarly situated.'" *Id.* at 860.

--------

[9]  DOC's recitation of Eaton's disciplinary history is based on
Eaton's deposition testimony. Because Eaton's deposition
testimony about her discipline at DOC is often vague and at
times inconsistent, the details of her official disciplinary history
at DOC are nearly incomprehensible. Further complicating
the issue, although documents from DOC's records of Eaton's
disciplinary history are referenced on numerous occasions in
her deposition, these documents were not included in the
record in the district court.

*Amrhein*, however, did not address the issue presented in this case: whether distinctions in disciplinary history render two individuals non-comparable when there is no evidence that the employer actually considered disciplinary history in making its termination decision. Here—where DOC repeatedly took the position in the district court that the only basis for the decision to terminate Eaton's employment was that she quit—not only does the evidence fail to indicate that disciplinary history was considered, but the record makes clear that disciplinary history played no role in DOC's decision to terminate Eaton's employment (if it even did "decide" to terminate her employment). These arguments—that Eaton's disciplinary history was a factor in her termination, that this disciplinary history was a legitimate reason for her discharge, and that this disciplinary history distinguished her from Curtis—were made for the first time in DOC's reply brief in support of its motion for summary judgment, and even then, only in the context of whether DOC's reasons for terminating Eaton's employment were pretextual. Neither DOC's motion for summary judgment nor the district court's decision cited evidence indicating that Eaton's disciplinary history played any role in any decision to terminate her employment.

It is routinely stated that similarly situated employees must be "directly comparable to the plaintiff in all material respects, which includes showing that the co-workers engaged in comparable rule or policy violations." *Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010) (quoting *Patterson v. Indiana News-*

*papers, Inc.*, 589 F.3d 357, 365-66 (7th Cir. 2009)). Our cases have further refined the inquiry: "all material respects" means comparable experience, education and qualifications, "*provided that the employer took these factors into account* when making the personnel decision in question." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (emphasis added); *see Hull v. Stoughton Trailers, LLC,* 445 F.3d 949, 952 (7th Cir. 2006) (same); *Bio v. Federal Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005) (same); *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003) (same). A characteristic that distinguishes two employees, regardless of its significance when objectively considered, does not render the employees non-comparable if the employer never considered that characteristic. The purpose of the similarly situated requirement is to provide a basis for a judgment about the fairness of the employer's decision. Factors never considered by the employer cannot provide any insight as to whether the employer's decision was motivated by discriminatory intent.

Here, the record provides no indication that DOC considered Eaton's disciplinary history in deciding to terminate her employment. Because the record contains no such evidence, there is no basis for believing that Eaton's disciplinary history was more serious than Curtis's or that DOC so considered it. On this record, it was error for the district court to conclude that Eaton and Curtis were not similarly situated based on their disciplinary history.

### III. CONCLUSION

For the foregoing reasons, we REVERSE the district court's grant of DOC's motion for summary judgment on Eaton's Title VII claim, and REMAND for proceedings consistent with this opinion.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DORIS KEETON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 10-CV-5502 |
| | ) | |
| MORNINGSTAR, INC. | ) | Judge Amy J. St. Eve |
| | ) | |
| Defendant. | ) | Magistrate Judge  Michael T. Mason |

## <u>NOTICE OF APPEAL</u>

NOTICE IS HEREBY GIVEN THAT PLAINTIFF, DORIS KEETON hereby

files her appeal to the United States Court of Appeals for the Seventh Circuit from the

entry of Judgment on May 23, 2011 on a finding in favor of the Defendant on summary

judgment by the Honorable JUDGE ST. EVE.

Respectfully submitted,

*Armand L. Andry*
Attorney for Plaintiff

ARMAND L. ANDRY
Attorney for Plaintiff
One South Dearborn, Suite 2100
Chicago, Illinois 60603
773/626-3058
Fax: 773/626-3061
e-mail: armandandry@hotmail.com



**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**219 SOUTH DEARBORN STREET**
**CHICAGO, ILLINOIS 60604**

**MICHAEL W. DOBBINS**
**CLERK**

312-435-5670

June 28, 2011

Mr. Gino J. Agnello, Clerk
U.S. Court of Appeals-Seventh Circuit
219 South Dearborn Street-Room 2722
Chicago, Illinois 60604

RE: Keeton v. MORNINGSTAR, Inc.

U.S.D.C. DOCKET NO. : 10cv5502

U.S.C.A. DOCKET NO. : 11-2298

Dear Mr. Agnello:

Please find attached the original record on appeal consisting of the following:

ELECTRONIC VOLUME(S) OF PLEADING(S)                    1

 VOLUME(S) OF TRANSCRIPT(S)

 VOLUME(S) OF DEPOSITION(S)

EXHIBITS:

ELECTRONIC VAULT ITEMS:                    1

OTHER (SPECIFY):

SPECIAL NOTE:

Please acknowledge date of receipt of the above mentioned materials on the attached copy of this
letter.

                              Very truly yours,

                              Michael W. Dobbins, Clerk

                              By:_____
                                 G. Lewis, Deputy Clerk

   **I, MICHAEL W. DOBBINS, CLERK** of the United States District Court for the Northern District of Illinois, do hereby certify to the United States Court of Appeals, for the Seventh Circuit, that the documents submitted herewith and annexed hereto are the original papers filed and entered of record in my office, on the dates in the List of Documents, and together with a true copy of docket entries as they appear in the official dockets in this office, consisting of:

1 Flash Drive of Pleadings
1 Flash Drive of Sealed Material

In the cause entitled: Keeton v. MORNINGSTAR, Inc..

USDC NO.    : 10cv5502

USCA NO.    : 11-2298

            IN TESTIMONY WHEREOF, I hereunto subscribed my name and affixed the seal of the aforesaid Court at Chicago, Illinois, this 28th day of June 2011.

            MICHAEL W. DOBBINS, CLERK

            By: _____
                G. Lewis, Deputy Clerk

A TRUE COPY-ATTEST
MICHAEL W. DOBBINS, CLERK
By  s/ G. LEWIS
DEPUTY CLERK
U.S. DISTRICT COURT, NORTHERN
DISTRICT OF ILLINOIS
DATE: JUNE 28, 2011

APPEAL, MASON, PROTO, TERMED

# United States District Court
# Northern District of Illinois - CM/ECF LIVE, Ver 4.2 (Chicago)
# CIVIL DOCKET FOR CASE #: 1:10-cv-05502
# Internal Use Only

Keeton v. MORNINGSTAR, INC.
Assigned to: Honorable Amy J. St. Eve
Case in other court:

11-02298

Date Filed: 08/31/2010
Date Terminated: 05/23/2011
Jury Demand: Defendant
Nature of Suit: 442 Civil Rights: Jobs
Jurisdiction: Federal Question

Cause: 42:1981 Civil Rights

**Plaintiff**

**Doris E. Keeton**                    represented by **Armand L. Andry**
                                       Attorney at Law
                                       One South Dearborn
                                       Suite 2100
                                       Chicago, IL 60603
                                       (773) 626-3058
                                       Fax: 773/626-3061
                                       Email: armandandry@hotmail.com
                                       *LEAD ATTORNEY*
                                       *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**MORNINGSTAR, INC.**                  represented by **Lisa Anne McGarrity**
                                       Franczek Radelet P.C.
                                       300 South Wacker Drive
                                       Suite 3400
                                       Chicago, IL 60606-6785
                                       (312) 986-0300
                                       Email: lam@franczek.com
                                       *LEAD ATTORNEY*
                                       *ATTORNEY TO BE NOTICED*

                                       **Abizer Zanzi**
                                       Franczek Radelet

300 S. Wacker Dr.
3400
Chicago, IL 60606
(312) 786-6510
Fax: (312) 986-9192
Email: az@franczek.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/31/2010 | 1 | COMPLAINT filed by Keeton Doris; Jury Demand. Filing fee $ 350, receipt number 0752-5171612.(Andry, Armand) (Entered: 08/31/2010) |
| 08/31/2010 | 2 | CIVIL Cover Sheet (Andry, Armand) (Entered: 08/31/2010) |
| 08/31/2010 | 3 | ATTORNEY Appearance for Plaintiff Keeton Doris by Armand L. Andry (Andry, Armand) (Entered: 08/31/2010) |
| 08/31/2010 | 4 | Right to sue letter by Keeton Doris (Andry, Armand) (Entered: 08/31/2010) |
| 08/31/2010 | | CASE ASSIGNED to the Honorable Amy J. St. Eve. Designated as Magistrate Judge the Honorable Michael T. Mason. (daj, ) (Entered: 08/31/2010) |
| 08/31/2010 | | SUMMONS Issued as to Defendant Morningstar, Inc. (ef, ) (Entered: 08/31/2010) |
| 09/01/2010 | 5 | MINUTE entry before Honorable Amy J. St. Eve: Joint Status Report due by 10/6/2010. Initial status hearing set for 10/12/2010 at 08:30 AM in courtroom 1241. [For further details see minute order.] Mailed notice (kef, ) (Entered: 09/01/2010) |
| 09/10/2010 | 6 | ATTORNEY Appearance for Defendant MORNINGSTAR, INC. by Lisa Anne McGarrity (McGarrity, Lisa) (Entered: 09/10/2010) |
| 09/10/2010 | 7 | ATTORNEY Appearance for Defendant MORNINGSTAR, INC. by Abizer Zanzi (Zanzi, Abizer) (Entered: 09/10/2010) |
| 09/20/2010 | 8 | ANSWER to Complaint by MORNINGSTAR, INC.(Zanzi, Abizer) (Entered: 09/20/2010) |
| 10/05/2010 | 9 | STATUS Report *(Joint Initial)* by MORNINGSTAR, INC. (Zanzi, Abizer) (Entered: 10/05/2010) |
| 10/06/2010 | 10 | MOTION by Defendant MORNINGSTAR, INC. for protective order *(Joint)* (Attachments: # 1 Exhibit A)(Zanzi, Abizer) (Entered: 10/06/2010) |
| 10/06/2010 | 11 | NOTICE of Motion by Abizer Zanzi for presentment of motion for protective order 10 before Honorable Amy J. St. Eve on 10/12/2010 at 08:30 AM. (Zanzi, Abizer) (Entered: 10/06/2010) |
| 10/07/2010 | 12 | MINUTE entry before Honorable Amy J. St. Eve: Defendant's joint motion for entry of protective order 10 is granted. Mailed notice (kef, ) (Entered: |

| | | 10/07/2010) |
|---|---|---|
| 10/07/2010 | 13 | AGREED PROTECTIVE Order Signed by the Honorable Amy J. St. Eve on 10/7/2010: The Protective Order governs pre-trial proceedings only. Parties need leave of court prior to filing any documents Under Seal. Pursuant to Local Rule 26(g), the clerk shall maintain the documents as restricted documents for a period of 63 days following the final disposition including appeals. Except where the court in response to a request of a party made pursuant to this section or on its own motion orders otherwise, at the end of the 63 day period the clerk shall return the restricted documents in the sealed enclosure to the attorney or party who or which filed it.Mailed notice(kef, ) (Entered: 10/07/2010) |
| 10/12/2010 | 14 | MINUTE entry before Honorable Amy J. St. Eve:Status hearing held on 10/12/2010 and continued to 12/1/2010 at 08:30 AM. Rule 26(a)(1) disclosures by 10/22/10. Written discovery to be issued by 11/17/10. Fact discovery to be completed by 2/11/11. Dispositive motions with supporting memoranda to be filed by 3/25/11. Plaintiff's written settlement demand by 10/29/10. Defendant's written settlement offer by 11/19/10. Courtesy copies of both letters should be delivered to chambers. Parties are directed to meet and confer pursuant to Rule 26(f) and exhaust all settlement possibilities prior to the next status hearing. Mailed notice (kef, ) (Entered: 10/12/2010) |
| 11/17/2010 | 15 | MOTION by Defendant MORNINGSTAR, INC. to compel *Defendant's Motion to Compel Responses to First Set of Interrogatories and First Requests for Production of Documents* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Zanzi, Abizer) (Entered: 11/17/2010) |
| 11/17/2010 | 16 | NOTICE of Motion by Abizer Zanzi for presentment of motion to compel, 15 before Honorable Amy J. St. Eve on 11/23/2010 at 08:30 AM. (Zanzi, Abizer) (Entered: 11/17/2010) |
| 11/22/2010 | 17 | MINUTE entry before Honorable Amy J. St. Eve: Defendant's motion to compel 15 is withdrawn. No appearance is required on the 11/23/10 notice date. Mailed notice (kef, ) (Entered: 11/22/2010) |
| 12/01/2010 | 18 | MINUTE entry before Honorable Amy J. St. Eve:Status hearing held on 12/1/2010 and continued to 1/25/2011 at 08:30 AM.Mailed notice (kef, ) (Entered: 12/01/2010) |
| 12/07/2010 | 19 | MOTION by Plaintiff Doris E. Keeton for leave to file *Plaintiff's First Amended Complaint* (Andry, Armand) (Entered: 12/07/2010) |
| 12/07/2010 | 20 | NOTICE of Motion by Armand L. Andry for presentment of motion for leave to file 19 before Honorable Amy J. St. Eve on 12/16/2010 at 08:30 AM. (Andry, Armand) (Entered: 12/07/2010) |
| 12/14/2010 | 21 | RESPONSE by MORNINGSTAR, INC.in Opposition to MOTION by Plaintiff Doris E. Keeton for leave to file *Plaintiff's First Amended Complaint* 19 (Zanzi, Abizer) (Entered: 12/14/2010) |

| | | |
|---|---|---|
| 12/16/2010 | 22 | MINUTE entry before Honorable Amy J. St. Eve:Motion hearing held on 12/16/2010. Plaintiff's motion for leave to file amended complaint 19 is taken under advisement. Mailed notice (kef, ) (Entered: 12/16/2010) |
| 12/20/2010 | 23 | MINUTE entry before Honorable Amy J. St. Eve: Plaintiff's motion for leave to file first amended complaint 19 is granted. Counsel should separately file the first amended complaint upon receipt of this order. Defendant to answer or otherwise plead by 1/10/11. Mailed notice (kef, ) (Entered: 12/20/2010) |
| 12/22/2010 | 24 | *First* AMENDED complaint by Doris E. Keeton against MORNINGSTAR, INC. (Andry, Armand) (Entered: 12/22/2010) |
| 01/10/2011 | 25 | ANSWER to amended complaint by MORNINGSTAR, INC.(Zanzi, Abizer) (Entered: 01/10/2011) |
| 01/25/2011 | 26 | MINUTE entry before Honorable Amy J. St. Eve:Status hearing held on 1/25/2011 and continued to 4/5/2011 at 08:30 AM. Plaintiff failed to appear. Plaintiff must be present at the next status hearing. Failure to appear may result in dismissal for failure to prosecute. Mailed notice (kef, ) (Entered: 01/25/2011) |
| 03/01/2011 | 27 | MOTION by Defendant MORNINGSTAR, INC.in limine *to Bar Evidence and Compel Deletion of Attorney-Client Privileged Communications* (Attachments: # 1 Exhibit B - F)(Zanzi, Abizer) (Entered: 03/01/2011) |
| 03/01/2011 | 28 | NOTICE of Motion by Abizer Zanzi for presentment of motion in limine 27 before Honorable Amy J. St. Eve on 3/7/2011 at 08:30 AM. (Zanzi, Abizer) (Entered: 03/01/2011) |
| 03/01/2011 | 29 | MOTION by Defendant MORNINGSTAR, INC. to seal document *to file Exhibit Under Seal* (Zanzi, Abizer) (Entered: 03/01/2011) |
| 03/01/2011 | 30 | SEALED EXHIBIT by Defendant MORNINGSTAR, INC. regarding MOTION by Defendant MORNINGSTAR, INC. to seal document *to file Exhibit Under Seal* 29 (Zanzi, Abizer) (Entered: 03/01/2011) |
| 03/01/2011 | 31 | NOTICE of Motion by Abizer Zanzi for presentment of motion to seal document 29 before Honorable Amy J. St. Eve on 3/7/2011 at 08:30 AM. (Zanzi, Abizer) (Entered: 03/01/2011) |
| 03/07/2011 | 32 | MINUTE entry before Honorable Amy J. St. Eve: Motion hearing held on 3/7/2011. Defendant's motion in limine to bar evidence and compel deletion of attorney-client privileged communications 27 is entered. Plaintiff's affidavit as to how she obtained these communications should be filed on 3/11/11. Plaintiff is given leave to file her affidavit under seal. Defendant's motion for leave to file exhibit under seal 29 is granted. Mailed notice (kef, ) (Entered: 03/07/2011) |
| 03/10/2011 | 33 | SEALED RESPONSE by Doris E. Keeton to order on motion to seal document,, motion hearing, 32 (Andry, Armand) (Entered: 03/10/2011) |
| 03/11/2011 | 34 | MINUTE entry before Honorable Amy J. St. Eve: The Court, in its discretion, grants Defendant's motion to bar evidence and compel deletion 27 . [For further details see minute order.] Mailed notice (kef, ) (Entered: |

| | | 03/11/2011) |
|---|---|---|
| 03/25/2011 | 35 | MOTION by Defendant MORNINGSTAR, INC. for summary judgment (Zanzi, Abizer) (Entered: 03/25/2011) |
| 03/25/2011 | 36 | Local Rule 56.1 Statement of Uncontested Material Facts STATEMENT by MORNINGSTAR, INC. (Attachments: # 1 Appendix List of Exhibits, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit S, # 21 Exhibit T, # 22 Exhibit U, # 23 Exhibit V)(Zanzi, Abizer) (Entered: 03/25/2011) |
| 03/25/2011 | 37 | MEMORANDUM *Defendant's Brief in Support of its Motion for Summary Judgment* (Zanzi, Abizer) (Entered: 03/25/2011) |
| 03/25/2011 | 38 | MOTION by Plaintiff Doris E. Keeton for extension of time to complete discovery (Andry, Armand) (Entered: 03/25/2011) |
| 03/25/2011 | 39 | NOTICE of Motion by Armand L. Andry for presentment of motion for extension of time to complete discovery 38 before Honorable Amy J. St. Eve on 4/5/2011 at 08:30 AM. (Andry, Armand) (Entered: 03/25/2011) |
| 03/31/2011 | 40 | RESPONSE by MORNINGSTAR, INC.in Opposition to MOTION by Plaintiff Doris E. Keeton for extension of time to complete discovery 38 (Zanzi, Abizer) (Entered: 03/31/2011) |
| 04/05/2011 | 41 | MINUTE entry before Honorable Amy J. St. Eve:Motion hearing held on 4/5/2011. Plaintiff's motion for extension of time to complete discovery 38 is taken under advisement. Mailed notice (kef, ) (Entered: 04/05/2011) |
| 04/05/2011 | 42 | MINUTE entry before Honorable Amy J. St. Eve: Plaintiff's motion to extend discovery cut-off and adjust time for responding to motion for summary judgment 38 is denied. Defendant's motion for summary judgment 35 is entered. Response should be filed on or before 5/3/11. Reply by 5/17/11. Status hearing set for 7/21/11 at 8:30 a.m. [For further details see minute order.] Mailed notice (kef, ) (Entered: 04/05/2011) |
| 05/23/2011 | 43 | MOTION by Plaintiff Doris E. Keeton to file instanter *her response to defendant's motion for summary judgment* (Attachments: # 1 Exhibit doctor's report, # 2 Exhibit plaintiff's local rule 56.1 statement, # 3 Exhibit plaintiff's exhibits 1 and 2 to rule 56.1 statement, # 4 Exhibit exhibits 3 and 4 to rule 56.1 statement, # 5 Exhibit plaintiff's memo of law in opposition to def msj)(Andry, Armand) (Entered: 05/23/2011) |
| 05/23/2011 | 44 | NOTICE of Motion by Armand L. Andry for presentment of motion to file instanter, 43 before Honorable Amy J. St. Eve on 6/1/2011 at 08:30 AM. (Andry, Armand) (Entered: 05/23/2011) |
| 05/23/2011 | 45 | MINUTE entry before Honorable Amy J. St. Eve: Defendant's motion for summary judgment 35 is granted. All pending dates and deadlines are stricken. Civil case terminated. [For further details see separate Memorandum Opinion and Order.] Mailed notice (kef, ) (Entered: 05/23/2011) |

| 05/23/2011 | 46 | MEMORANDUM Opinion and Order Signed by the Honorable Amy J. St. Eve on 5/23/2011:Mailed notice(kef, ) (Entered: 05/23/2011) |
|---|---|---|
| 05/23/2011 | 47 | ENTERED JUDGMENT Signed by the Deputy Clerk on 5/23/2011:Mailed notice(kef, ) (Entered: 05/23/2011) |
| 05/23/2011 | 48 | MINUTE entry before Honorable Amy J. St. Eve: Plaintiff's motion for leave to file response to defendant's motion for summary judgment instanter 43 is denied as moot. No appearance is required on the 6/1/11 notice date. Mailed notice (kef, ) (Entered: 05/23/2011) |
| 06/07/2011 | 49 | NOTICE of appeal by Doris E. Keeton regarding orders 47 , 46 , 48 , 45 Filing fee $ 455, receipt number 0752-6071995. (Attachments: # 1 Notice of Filing, # 2 Exhibit jurisdictional statement)(Andry, Armand) (Entered: 06/07/2011) |
| 06/08/2011 | 50 | NOTICE of Appeal Due letter sent to counsel of record. (gel, ) (Entered: 06/08/2011) |
| 06/08/2011 | 51 | TRANSMITTED to the 7th Circuit the short record on notice of appeal 49 . Notified counsel (gel, ) (Entered: 06/08/2011) |
| 06/09/2011 | 52 | ACKNOWLEDGEMENT of receipt of short record on appeal regarding notice of appeal 49 ; USCA Case No. 11-2298. (gcy, ) (Entered: 06/10/2011) |

**KEY**

**All items are included in this record.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DORIS KEETON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 10-CV-5502 |
| | ) | |
| MORNINGSTAR, INC. | ) | Judge Amy J. St. Eve |
| | ) | |
| Defendant. | ) | Magistrate Judge  Michael T. Mason |

**JURISDICTIONAL STATEMENT**

This action was brought under 42 U.S.C. 2000e et seq., and 42 U.S.C. 1981 alleging violation of the Plaintiff's right to be free of discrimination based on race and in retaliation for opposing discrimination, before the United States District Court for the Northern District of Illinois, Eastern Division.  The jurisdiction of the district court was invoked pursuant to the above-named statutes and 28 U.S.C. Sec. 1331(a)

The matter was decided by the court on summary judgment on May 23, 2011, the Court entered a finding for Defendant.  Judgment was entered on May 23, 2011.

Appellate jurisdiction is invoked by Plaintiff on the judgment pursuant to 28 U.S.C.  Sec. 1291.

Respectfully Submitted,

_____
Attorney for Plaintiff

ARMAND L. ANDRY
Attorney for Plaintiff
One South Dearborn, Suite 2100
Chicago, Illinois 60603
773/626-3058
Fax: 773/626-3061
e-mail: armandandry@hotmail.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DORIS KEETON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 10-CV-5502 |
| | ) | |
| MORNINGSTAR, INC. | ) | Judge Amy J. St. Eve |
| | ) | |
| Defendant. | ) | Magistrate Judge  Michael T. Mason |

**NOTICE OF FILING**

   NOTICE IS HEREBY GIVEN that on June 6, 2011 or as soon thereafter as counsel may be able I shall

file the attached Notice of Appeal with the clerk of United States District Court for the Northern District of

Illinois, 219 S. Dearborn, Chicago, Illinois.

Respectfully Submitted,
   _/s/ Armand L. Andry_
   Armand L. Andry

ARMAND L. ANDRY
Attorney for Plaintiff
One South Dearborn, Suite 2100
Chicago, Illinois 60603
773/626-3058
Fax: 773/626-3061
e-mail: armandandry@hotmail.com

**CERTIFICATE OF SERVICE**

   I, Armand L. Andry, an attorney, certify that I caused to be served a copy of the foregoing notice
and accompanying documents on Defendants by filing a copy with the court's ECF system on June 7,
2011.

/s/ _Armand L. Andry_

Case: 1:10-cv-05502 Document #: 47 Filed: 05/23/11 Page 1 of 1 PageID #:447
AO 450 (Rev. 5/85) Judgment in a Civil Case
Case: 11-2298    Document: 12        Filed: 08/12/2011    Pages: 84

# United States District Court

## Northern District of Illinois

### Eastern Division

| | |
|---|---|
| Doris Keeton | **JUDGMENT IN A CIVIL CASE** |
| v. | Case Number: 10 C 5502 |
| Morningstar, Inc. | |

☐  Jury Verdict.  This action came before the Court for a trial by jury.  The issues have been tried and the jury rendered its verdict.

■  Decision by Court.  This action came to hearing before the Court.  The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that Morningstar, Inc.'s Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56(a) is granted.

Michael W. Dobbins, Clerk of Court

Date: 5/23/2011

_____

/s/ Katie Franc, Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DORIS KEETON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  10 C 5502 |
| v. | ) | |
| | ) | |
| MORNINGSTAR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On December 12, 2010, Plaintiff Doris Keeton filed a five-count First Amended

Complaint against her employer Defendant Morningstar, Inc. ("Morningstar") alleging race

discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e, *et seq*., and 42 U.S.C. § 1981.  Before the Court is Morningstar's Motion for Summary

Judgment pursuant to Federal Rule of Civil Procedure 56(a).  For the following reasons, the

Court grants Morningstar's motion and dismisses this lawsuit in its entirety.

## BACKGROUND[1]

Morningstar, a corporation doing business in Chicago, Illinois, is a leading provider of

independent investment research.  (R. 36, Def.'s Rule 56.1 Stmt. Facts ¶ 1.)  Since August 2002,

Morningstar has employed Keeton, who is African-American, in its legal department as a

Compliance Consultant.  (*Id.* ¶¶ 2, 4.)  Morningstar employs two other Compliance Consultants,

---

[1]  Because Plaintiff failed to file any Northern District of Illinois Local Rule 56.1(b)(3)
response, the uncontroverted statements in Defendant's Local Rule 56.1(a)(3)  statement of facts
are deemed admitted.  *See Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009).

Lisa Derner and Rita Bentzler, who are white. (*Id.* ¶¶ 6, 7.) All Compliance Consultants report

to Scott Schilling, Morningstar's Chief Compliance Officer. (*Id.* ¶¶ 4, 6.) Morningstar assigns

each Compliance Consultant to one of its three subsidiaries that are registered investment

advisors. (*Id.* ¶ 8.) Keeton's assigned subsidiary is Ibbotson Associates. (*Id.*) Compliance

Consultants are responsible for ensuring that their respective subsidiary complies with all

applicable federal securities laws. (*Id.* ¶¶ 4, 8.)

Morningstar does not maintain any formal policies or practices for determining the base

salaries of its Compliance Consultants and does not factor employee seniority at Morningstar

into salary decisions. (*Id.* ¶¶ 9, 11.) Instead, Morningstar makes initial salary offers based on

market factors, including the availability of qualified candidates and their salary requirements.

(*Id.* ¶ 10.) Keeton, Bentzler, and Derner were all lateral hires with several years of experience at

other firms before joining Morningstar. (*Id.* ¶ 12.) Morningstar offered all of the Compliance

Consultants a higher base salary than what they were making at their prior employers. (*Id.*) At

the time Derner was hired in April 2008, Keeton had a base salary of $68,000, and Bentzler had

a base salary of $65,000. (*Id.* ¶ 13.) Derner, who was making $68,000 at her previous job,

demanded a base salary of $70,000 to come to Morningstar – a demand Morningstar met. (*Id.* ¶

14.)

In February 2010, Morningstar's General Counsel Richard Robbins sought input from

Schilling regarding potential salary increases for his direct reports, including Keeton, Bentzler,

and Derner. (*Id.* ¶¶ 31, 32.) Schilling recommended that Keeton, Derner, and Bentzler all

receive salary increases based on their 2009 performance evaluations, but recommended the

smallest increase for Keeton because her performance review identified several areas in which

she needed improvement. (*Id.* ¶¶ 27, 33, 34.) The Compliance Consultants were awarded the

following base salaries as of July 1, 2010 – $70,000 for Keeton, $73,000 for Derner, and $70,150

for Bentzler. (*Id.* ¶ 35.) Since March 10, 2010, Keeton has been on disability leave for medical

reasons unrelated to this lawsuit, and Morningstar's salary adjustments took effect nearly four

months after Keeton commenced her medical leave of absence. (*Id.* ¶¶ 35, 36.)

In June 2010, Keeton filed an EEOC charge alleging that "[d]uring my employment I

discovered that I am being paid less than a non-Black coworker with less seniority and less

qualifications." (R. 4, EEOC Charge at 2.) On June 11, 2010, the EEOC issued Keeton her

right-to-sue letter. (*Id.* at 1.) Keeton filed the present lawsuit on August 31, 2010, and thus it is

timely.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.

56(a).[2] A genuine dispute as to any material fact exists if "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment

motions, "facts must be viewed in the light most favorable to the nonmoving party only if there

is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167

---

[2] Effective December 1, 2010, Federal Rule of Civil Procedure 56 was amended. Among other changes, the summary judgment standard previously enumerated in subsection (c) was moved to subsection (a), and its wording was changed from "genuine issue" to "genuine dispute." Nevertheless, according to the 2010 Advisory Committee Notes, "the standard for granting summary judgment remains unchanged."

L.Ed.2d 686 (2007).  The party seeking summary judgment has the burden of establishing the

lack of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.

Ct. 2548, 91 L.Ed.2d 265 (1986).  After "a properly supported motion for summary judgment is

made, the adverse party 'must set forth specific facts showing that there is a genuine issue for

trial.'"  *Anderson*, 477 U.S. at 255 (quotation omitted).

## ANALYSIS

### I.      Race Discrimination – Counts I and III

In Counts I and III of her First Amended Complaint, Keeton alleges that Morningstar

intentionally discriminated against her based on her race in violation of Title VII and 42 U.S.C. §

1981.  *See Swearnigen-El v. Cook County Sheriff's Dept.,* 602 F.3d 852, 860 n.6 (7th Cir. 2010)

(courts apply the same standards for establishing race discrimination under Title VII and Section

1981).  Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any

individual, or otherwise to discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's race, color, religion,

sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  To avoid summary judgment on her race

discrimination claim, Keeton may use either the direct method or indirect method of proof

pursuant to the familiar *McDonnell Douglas* framework.  *See Naik v. Boehringer Ingelheim*

*Pharm., Inc.,* 627 F.3d 596, 599 (7th Cir. 2010); *Egonmwan v. Cook County Sheriff's Dept.,* 602

F.3d 845, 849-50 (7th Cir. 2010).  Because Keeton has not filed a Northern District of Illinois

Local Rule 56.1(b)(3)(C) Statement of Additional Facts, she has not presented any direct

evidence of race discrimination, therefore, the Court turns to the indirect method of proof.

To establish a prima facie case under the indirect method of proof, Keeton must show

that (1) she is a member of a protected class; (2) her job performance met Morningstar's legitimate expectations; (3) she suffered an adverse employment action; and (4) Morningstar treated similarly situated individuals outside of her protected class more favorably. *See Egonmwan,* 602 F.3d at 850; *Swearnigen-El,* 602 F.3d at 860. If Keeton establishes these four prima facie elements of race discrimination, the burden then shifts to Morningstar to offer a legitimate, nondiscriminatory reason for the adverse employment action. *See Naik*, 627 F.3d at 600. If Morningstar meets this burden, Keeton must demonstrate that the proffered reasons are pretext for discrimination. *See Egonmwan,* 602 F.3d at 850.

Courts often merge the second prima facie element, namely, whether the employee was performing to the employer's legitimate job expectations, with the pretext question because the issue of whether a plaintiff performed her job in a satisfactory manner lies at the heart of both questions. *See Hague v. Thompson Distribution Co.,* 436 F.3d 816, 822-23 (7th Cir. 2006). Here, Keeton cannot establish that she was performing to Morningstar's legitimate job expectations in the context of the July 2010 salary increases. *See Lucas v. PuraMax, Bank,* FSB, 539 F.3d 661, 666 (7th Cir. 2008) (unapproachable, unproductive employee with poor attitude did not meet employer's legitimate job expectations). More specifically, not only is undisputed that both Derner and Bentzler had better performance reviews than Keeton, Keeton's peer reviews reflect that she had problems with interpersonal skills, that she had a negative attitude, and that she was abrupt or abrasive in her approach with others. (*See* Def.'s Stmt. Facts ¶¶ 19-24.) Moreover, Schilling's performance review of Keeton specifically identified several areas of improvement, including cultivating better relationships. (*Id*. ¶ 27.) Based on these undisputed facts, Morningstar has proffered a legitimate, nondiscriminatory reason for giving Keeton the

5

smallest pay increase in July 2010.  *See Naik*, 627 F.3d at 600.  In addition, Keeton has failed to

offer any evidence that Morningstar's proffered reason is pretext for discrimination.  *See*

*Egonmwan,* 602 F.3d at 850.  In other words, she has not presented facts raising a genuine

dispute as to any material fact for trial that Morningstar's explanation based on Keeton's

performance review is dishonest.  *See Everroad v. Scott Truck Sys., Inc.,* 604 F.3d 471, 479 (7th

Cir. 2010) ("Pretext means a dishonest explanation, a lie rather than an oddity or an error.")

(citation omitted).

Meanwhile, Morningstar has given a legitimate reason for why Keeton's base salary of

$68,000 was lower than Derner's base salary of $70,000 when Derner was hired in 2008.  More

specifically, Morningstar explains that Derner was making $68,000 at her previous job and

demanded a base salary of $70,000 to come to Morningstar, which Morningstar offered.  Thus,

Derner's base salary was the result of negotiations – not some prohibited animus.  *See Wernsing*

*v. Illinois Dep't of Human Servs.,* 427 F.3d 466, 468-69 (7th Cir. 2005) ("Employment-

discrimination statutes forbid reliance on criteria such as race and sex" and '[p]rovided that they

avoid these, employers are free to set their own standards.").  In addition, it is undisputed that

Morningstar does not factor employee seniority at Morningstar into its salary decisions.  Again,

Keeton has failed to argue, let alone establish, that Morningstar's proffered reason for this base

pay difference is pretext for discrimination.  *See Silverman*, 637 F.3d at 743-44 (pretext is "more

than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie,

specifically a phony reason for some action.") (citation omitted).  As the Seventh Circuit has

repeatedly explained, federal courts are not super-personnel departments second-guessing

employers' business decisions.  *See Stephens v. Erickson,* 569 F.3d 779, 788 (7th Cir. 2009).

Because Keeton has not presented facts raising a genuine dispute as to any material fact

for trial concerning her claim based on the Compliance Consultant's pay differences, the Court

grants Morningstar's summary judgment motion as to Counts I and III.[3]

## II.    Retaliation – Counts II, IV, and V

Next, Keeton brings retaliation claims based on Title VII and Section 1981, which, like

intentional discrimination claims, courts analyze in the same manner.  *See Pantoja v. American*

*NTN Bearing Mfg. Corp.*, 495 F.3d 840, 848 (7th Cir. 2007).  "Title VII of the Civil Rights Act

of 1964 forbids retaliation against anyone who 'has opposed any practice made an unlawful

employment practice by this subchapter, or because he has made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing under this subchapter.'"

*Loudermilk v. Best Pallet Co., LLC,* 636 F.3d 312, 314 (7th Cir. 2011) (quoting 42 U.S.C. §

2000e–3(a)).  A plaintiff may establish her retaliation claim under the direct or indirect method

of proof.  *See Weber v. Universities Research Ass'n, Inc.,* 621 F.3d 589, 592 (7th Cir. 2010).

"To avoid summary judgment under the direct method of proof for proving retaliation, a

plaintiff must show: (1) that she engaged in a statutorily protected activity; (2) that she suffered a

materially adverse action by her employer; and (3) there was a causal link between the two."

*Silverman v. Board of Educ. of City of Chicago,* 637 F.3d 729, 740 (7th Cir. 2011); *see also*

*Leitgen v. Franciscan Skemp Healthcare, Inc.,* 630 F.3d 668, 673 (7th Cir. 2011).  To establish a

---

[3]  Keeton's response brief to the present summary judgment motion was due on or before
May 3, 2011.  The Court contacted Keeton's counsel on May 12, 2011 about the late response
after which counsel informed the Court that he would be filing his response brief instanter on
May 13, 2011.  To date, counsel has not filed a response brief or motion for an extension of time.
Because counsel failed to file a timely response brief to Morningstar's summary judgment
motion, along with the requisite Local Rule 56.1 Statements, the Court has relied upon Keeton's
First Amended Complaint and EEOC charge to discern her arguments.

prima facie case of retaliation under the indirect method of proof, Keeton must demonstrate two

of the same direct method elements: (1) she engaged in a statutorily protected activity and (2)

she suffered an adverse action. *See Silverman,* 637 F.3d at 742. The indirect method of proof

also requires Keeton to show that she met Morningstar's legitimate job expectations and that

Morningstar treated her less favorably than similarly situated employees who did not engage in

the statutorily protected activity. *See id.*; *Hill v. Potter,* 625 F.3d 998, 1001 (7th Cir. 2010).

### A.    Retaliation for Conduct Before Keeton Filed EEOC Charge

Keeton filed her EEOC charge in June 2010 alleging that Morningstar discriminated and

retaliated against her because of her race. It is undisputed, however, that Keeton had been on

medical leave since March 2010 when she filed her June 2010 EEOC charge. It is also

undisputed that Keeton never complained to management or anyone in her department about race

discrimination prior to filing her EEOC charge. (*See* Def.'s Stmt. Facts ¶ 57.) Further, there is

no dispute that Morningstar's management in its Human Resources Department was aware of

any conversations Keeton had with staff members before Keeton filed her EEOC charge. (*Id.* ¶

60.)

"In order to establish retaliation pursuant to Title VII, the employer must have had actual

knowledge of the protected activity in order for its decisions to be retaliatory." *Nagle v. Village

of Calumet Park,* 554 F.3d 1106, 1122 (7th Cir. 2009). It is not sufficient than an employer

could or should have known about an employee's complaint, instead, an employer must have

actual knowledge of the employee's complaints of discrimination complaint before any of its

decisions can be retaliatory. *See Hobbs v. City of Chicago,* 573 F.3d 454, 463 (7th Cir. 2009);

*Tomanovich v. City of Indianapolis,* 457 F.3d 656, 668 (7th Cir. 2006). Because it is undisputed

that Morningstar management did not have actual knowledge of Keeton's race discrimination complaints before she filed her EEOC charge, Morningstar cannot be liable for retaliating against Keeton for conduct occurring before she filed her charge. *See Nagle,* 554 F.3d at 1122. As such, the Court grants Morningstar's summary judgment motion as to Counts II and IV of her First Amended Complaint.

### B. Retaliation Based on Conduct After Keeton Filed EEOC Charge

During the course of this litigation, Morningstar brought a motion in limine to bar evidence and compel deletion of attorney-client privileged communications. More specifically, during discovery, Keeton produced a number of private, confidential e-mail communications between other Morningstar employees, including Morningstar's chief compliance officer, general counsel, and director of human resources. These e-mails contained legal advice from Morningstar's in-house and outside counsel. Pursuant to an internal investigation, Morningstar concluded that Keeton had improperly obtained the e-mails by using the company's enterprise vault surveillance software, which Keeton had access to as a Compliance Consultant. Compliance officers use the software to conduct discrete searches relating to Morningstar's affiliates' compliance with the federal securities laws. Morningstar maintains that it did not authorize Keeton to use this software to conduct personal searches or to obtain confidential e-mails.

Thereafter, on February 7, 2011, counsel for Morningstar sent Keeton's counsel an e-mail advising him that Keeton was in possession of attorney-client privileged communications without authorization. Morningstar's counsel requested the return of these e-mails and that upon return of these e-mails, counsel would produce all non-privileged communications that were

9

responsive to Keeton's discovery requests.  Keeton's counsel refused Morningstar's request.

Thereafter, Morningstar brought the motion in limine and to compel, and, on March 11, 2011,

the Court granted Morningstar's motion.

    In Count V of her First Amended Complaint, Keeton alleges that Morningstar's conduct

during this discovery dispute was a "direct reaction" to her participation in the EEOC complaint

process.  Because Keeton has not set forth any evidence or argument under the direct method of

proving retaliation, the Court turns to whether she can establish her retaliation claim under the

indirect method of proof.  As discussed above, Keeton has failed to set forth sufficient evidence

raising a genuine dispute as to any material fact that she was meeting Morningstar's legitimate

job expectations when she received a smaller pay increase in July 2010 based on her

performance reviews.  *See Silverman,* 637 F.3d at 742.

    In addition, there is no evidence in the record that Morningstar treated Keeton less

favorably than similarly situated employees who did not engage in the statutorily protected

activity.  *See LaBella Winnetka, Inc. v. Village of Winnetka,* 628 F.3d 937, 942 (7th Cir. 2010)

(similarly situated employees must be directly comparable in all material respects).  To clarify,

through negotiations, Morningstar made a business decision to offer Derner a base salary that

was $2,000 higher than Keeton's salary at the time Morningstar hired Derner.  Thus, the

situation in hiring Derner and Keeton was not directly comparable in all material aspects because

the difference of base salary was due to labor market forces at the time Morningstar hired Derner

and Derner's prior experience and pay in the industry.  *See Merillat v. Metal Spinners, Inc.,* 470

F.3d 685, 697 (7th Cir. 2006) ("We have held that an employer may take into account market

forces when determining the salary of an employee"); *see, e.g., Lloyd v. Swifty Transp., Inc.,* 552

10

F.3d 594, 599 (7th Cir. 2009).

Finally, Morningstar brought the motion in limine to bar evidence and compel deletion of attorney-client privileged communications – that the Court granted – because Keeton was wrongfully in possession of privileged documents. This is common discovery practice and Morningstar's conduct was warranted under the circumstances. Accordingly, the Court grants Morningstar's summary judgment motion as to Count V of the First Amended Complaint.

## CONCLUSION

For the foregoing reasons, the Court grants Morningstar's Motion for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56(a).

**Date:** May 23, 2011

ENTERED

AMY J. ST. EVE
United States District Court Judge

11

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.2**
**Eastern Division**

Doris E. Keeton

                   Plaintiff,

v.                                           Case No.: 1:10–cv–05502
                                             Honorable Amy J. St. Eve

MORNINGSTAR, INC.

                   Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, May 23, 2011:

     MINUTE entry before Honorable Amy J. St. Eve: Plaintiff's motion for leave to file response to defendant's motion for summary judgment instanter [43] is denied as moot. No appearance is required on the 6/1/11 notice date. Mailed notice(kef, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DORIS KEETON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 10-CV-5502 |
| | ) | |
| MORNINGSTAR, INC. | ) | Judge Amy J. St. Eve |
| | ) | |
| Defendant. | ) | Magistrate Judge  Michael T. Mason |

## PLAINTIFF DORIS KEETON'S NOTICE OF MOTION FOR LEAVE TO FILE RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NOTICE IS HEREBY GIVEN that at 8:30 a. m. on June 1, 2011, or as soon thereafter as counsel may be able I shall appear before the Honorable Judge Amy St. Eve and present the attached Motion for leave to file plaintiff's Response to Defendant's Motion for Summary Judgment consisting of her Local Rule 56.1 Statement; her exhibits to her Local Rule 56.1 Statement; and her Memorandum of Law in Opposition copies of which accompanies this notice, in the courtroom usually occupied by her in Room 1241 of the United States District Court for the Northern District of Illinois, 219 S. Dearborn, Chicago, Illinois.

Respectfully Submitted,
  /s/ Armand L. Andry
Armand L. Andry

ARMAND L. ANDRY
ATTORNEY FOR PLAINTIFF
One South Dearborn
Suite 2100
Chicago, Illinois 60603
773/626-3058

1

**CERTIFICATE OF SERVICE**

    I, Armand L. Andry, an attorney, certify that I served a copy of the foregoing notice and accompanying motion by filing a copy on the courts ECF system on May 23, 2011, from Chicago, Illinois.

                                           _/s/ Armand L. Andry_____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DORIS KEETON,                          )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )      Case No.: 10-CV-5502
                                       )
MORNINGSTAR, INC.                      )      Judge Amy J. St. Eve
                                       )
            Defendant.                 )      Magistrate Judge  Michael T. Mason

## PLAINTIFF DORIS KEETON'S MOTION FOR LEAVE TO FILE RESPONSES TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT INSTANTER

NOW COME THE PLAINTIFF, DORIS KEETON through her attorney, Armand L. Andry, and submits the following on oath and under penalty of perjury as provided by law as her motion for leave to file her Responses to Defendant's Motion for Summary Judgment instanter:

1. Plaintiff's Response was due May 3, 2011.

2. Plaintiff was unable to file her Response timely for the following reasons:

   a. April 11- 2011  People v. Roberto Rivera, Circuit Court of Cook County.

   b. Apr. 13- Roger Dezort, Circuit Court of Cook County.

   c. Apr. 14 -  People v. Nicholas Spina. Circuit Court of Cook County.

   d. Apr. 15 -  People v. Keith Villarreal, Kane County Courthouse.

   e. Apr. 18 – People v. Francisco Llamas, Circuit Court of Cook County.

1

f. Apr. 19 – Wesley Scott v. Officer Wallace, U.S. District Court, Judge Shadur.

g. Estate of Gerald Garnuette, Circuit Court of Cook County.

h. Apr. 20 – Chicago Title v. Marius Maldovan, U. S. District Court, Judge Norgle.

i. Anshuman Soni v. University of Illinois, U.S. District Court, Judge Grady.

j. Apr. 21 -  Hamida  Naficy v. Illinois Department of Human Services, U.S. District Court,  Judge Denlow.

k. Apr. 25 – People v. William Ross, Circuit Court of Cook County.

l. Apr. 25- People v. Clyde Lowe, Sr., Circuit Court of Cook County, Jury Trial.

m. Apr. 26 – People v. Clyde Lowe, Sr., Circuit Court of Cook County.  Continued Jury Trial.

n. Apr. 27 -  Deloria  Johnson v. U.S. Department of Justice, U. S. District Court,  Judge Hibbler.

o. Apr. 28 –  Marius  Moldovan, Interview with I.R.S.

p. Apr. 29 – People v. Raul Martinez, Circuit Court of Cook County, Plea Agreement Entered.

q. May 2  -  People v. Roberto Rivera, Circuit Court of Cook County, Jury Trial Scheduled, Continued.

r. May 3 -  Wesley Scott v. Officer  Wallace, U.S. District Court, Judge  Shadur.

2

      s.   May 10 - Wesley Scott v. Town of Cicero, U. S. District Court, Judge Gottschall.

      t.   May 11 - People v. Christopher Jackson, Circuit Court of Cook County.

      u.   May 12 – People v. Franciso Llamas, Circuit Court of Cook County, hearing on Motion to Quash.

      v.   May 16 – Betty Jean Cole and State of Illinois, Hearing  at the Illinois Human Rights Commission, hearing continued.

      w.   Plaintiff's Attorney has to go to the emergency room, Westlake Hospital for severe pain in right arm.  (See attached medical notes)

      x.   May 17 – Betty Jean Cole and State of Illinois, scheduled hearing at the Human Rights Commission, has to be continued due to medical emergency.

      y.   May 19 – Bone scan at Westlake Hospital.

3.   Plaintiff's attorney was experiencing severe pain to his right arm during this period which was eventually diagnosed as a pathological fracture of the right arm which will require surgery.  Plaintiff's attorney is right-handed and could only type with his left hand.  (See attached medical notes)

4.   Defendant will not be prejudiced if their time to reply is appropriately adjusted.

WHEREFORE, Plaintiff seeks leave to file the attached Response to summary

judgment instanter and Defendant's time to reply be extended.

Respectfully Submitted,
_Armand L. Andry_____
Armand L. Andry

ARMAND L. ANDRY
ATTORNEY FOR PLAINTIFF
One South Dearborn, Suite 2100
Chicago, Illinois 60603
773/626-3058

## CERTIFICATE OF SERVICE

I, Armand L. Andry, an attorney, certify that I caused to be served on Defendant a copy of the foregoing and accompanying documents by filing the same with the court's ECF system.

__Armand L. Andry_____
Armand L. Andry

4